LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendants
    Metropolitan Transportation Authority, Elliot Sander, William
    Morange, Kevin McConville, and Terrence Culhane
885 Third Avenue, 16th Floor
New York, NY 10022.4834
212.583.9600
Craig R. Benson
Stephen A. Fuchs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| Marilyn Y. Armstrong, Marshall R. Mazyck, Lillian Alvarado, Gordon Urquhart, Blake J. Willett, Bryan Henry, Kenneth Davis, Eric Moore, Nzingha M. Kellman, and Michael Benjamin, | Civil Action No. 07-3561(GEL) (HBP)  ECF Case |
| Plaintiffs, | |
| -against- | |
| Metropolitan Transportation Authority, Elliot Sander, Executive Director and Chief Executive Officer of the MTA, William Morange, Deputy Executive Director/Director of Security of the MTA, Kevin McConville, Chief of the MTA Police Department, and Terrance Culhane, Assistant Deputy Chief of the MTA Police Department, | |
| Defendants. | |

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCLOSURE OF PERSONNEL FILES OF SUPERVISORS**

TABLE OF CONTENTS

PAGE

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 1

III. THE REQUESTED CONFIDENTIAL PERSONNEL AND DISCIPLINARY RECORDS ARE NOT RELEVANT TO PLAINTIFFS' DISPARATE TREATMENT CLAIMS. ................................................................................................................................ 3

 A. Disciplinary Action Against the Plaintiffs ...................................................... 5

 1. Plaintiffs' Claims of Disproportionate Discipline are Time-Barred ................ 5

 2. Plaintiffs Have Not Identified Any Supervisors who Are Similarly Situated to Them. ............................................................................................. 6

  a. Motor Vehicle Accidents .................................................................. 7

  b. Breach of Confidentiality ................................................................. 8

  c. Allegations of Misconduct by the Supervisors are Not Relevant to Plaintiffs' Claims ........................................................................... 9

 2. Henry's Alleged Comparators ........................................................................ 10

 3. Kellman's Claim Regarding the Detective Sergeant Position ........................ 11

 4. Alleged Comparators to Plaintiffs Urquhart and Davis ................................. 12

 5. Kathleen Finneran and Terrence Culhane are Not Comparators to Any of the Plaintiffs. .............................................................................................. 13

IV. CONCLUSION ................................................................................................................. 14

TABLE OF AUTHORITIES

PAGE

**Cases**

*Banks v. CBOC, West, Inc.*, No. 01 C 0795, 2003 WL 1888844 (N.D. Ill. April 19, 2003) .......... 3

*Brown v. Coach Stores Inc.*, 163 F.3d 706 (2d Cir. 1998) .......................................................... 5, 11

*Bynog v. SL Green Realty Corp.*, No. 05 Civ. 0305 WHP, 2007 WL 831740 (S.D.N.Y. March 20, 2007) .......... 7

*Davis v. Coca-Cola Bottling Consolidated*, 516 F.3d 955 (11th Cir. 2008) .......... 5

*Gehring v. Case Corp.*, 43 F.3d 340 (7th Cir. 1994) .......... 3

*Jones v. R.R. Donnelley & Sons Company*, 541 U.S. 369 (2004) .......... 13

*Ledbetter v. Goodyear Tire and Rubber Co., Inc.* ____ U.S. ___, 127 S.Ct. 2162 (2007) .......... 6

*Mandell v. County of Suffolk*, 316 F.3d 368 (2d Cir. 2003) .......... 5

*Martin v. Lamb*, 122 F.R.D. 143 (W.D.N.Y. 1988) .......... 4

*McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973) .......... 11

*Mercado v. Division of New York State Police*, 989 F.Supp. 521 (S.D.N.Y. 1998) .......... 4

*Murray v. Visiting Nurse Service of New York*, 528 F.Supp.2d 257 (S.D.N.Y. 2007) .......... 5

*National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002) .......... 6

*Patrolman's Benevolent Association of New York v. City of New York*, 310 F.3d 43 (2d Cir. 2002) .......... 7

*Petrosino v. Bell Atlantic*, 385 F.3d 210 (2d Cir. 2004) .......... 11

*Rifkinson v, CBS, Inc.*, Case No. 94 Civ. 7985 (KTD), 1995 WL 614565 (S.D.N.Y. October 18, 1995) .......... 3

*Shah v. James P. Purcell Associates, Inc.*, Case No. 3:05 Civ. 306 (PCD), 2006 WL 988245 (D. Conn. April 12, 2006) .......... 3

**Statutes**

42 U.S.C. § 1981 .......... 13

N.Y. Pub. Auth. Law § 1266-h .......... 5

New York Civil Rights Law § 50-a ("Section 50-a") ............................................................................ 4

**Rules**

Fed. R. Civ. P. 26(b)(1) .......................................................................................................................... 4

I.  **PRELIMINARY STATEMENT**

Pursuant to the Court's May 15, 2008 Order (the "May 15 Order"),[1] Defendants submit this memorandum in opposition to Plaintiffs' request to discover the confidential personnel files and disciplinary records of Metropolitan Transportation Authority ("MTA") Police Department ("MTA PD") supervisors who Plaintiffs allege engaged in discriminatory conduct.[2] Plaintiffs now argue that these supervisors are comparators to the individual plaintiffs, and therefore, they are entitled to obtain these disciplinary records. As set forth below, Plaintiffs have failed to establish that the supervisors whose records they seek are valid comparators. Moreover, the Plaintiffs rely upon allegations of disproportionate discipline that are time-barred and cannot form the basis for intrusive discovery into the confidential personnel files of MTA PD supervisors. The supervisors' records are therefore not "relevant and material" to Plaintiffs' claims as a matter of law, and should not be disclosed.[3]

II.  **FACTUAL AND PROCEDURAL BACKGROUND**

The May 15 Order addressed, among other items, Plaintiffs' request for discovery of the personnel files of "decision makers/supervisors," (Fuchs Decl. Ex. A, p. 3), that is, certain identified MTA PD supervisors who Plaintiffs accuse of discriminatory conduct. With respect to such supervisors, who were not previously identified as "comparators," the Court directed Plaintiffs' counsel to provide defendants with a list of the infractions or violations for which Plaintiffs contend disproportionate discipline was imposed on them. The Order gave Defendants

---

[1] A copy of the May 15 Order is annexed for the Court's convenience as Exhibit A to the accompanying Declaration of Stephen A. Fuchs ("Fuchs Decl.").
[2] Defendants have previously produced documents reflecting allegations of discriminatory conduct or excessive force by the supervisors at issue here.
[3] Of the 11 supervisors at issue here, only one, Captain James Fitzpatrick, is arguably a comparator to Bryan Henry, one of the plaintiffs. Defendants will produce Fitzpatrick's disciplinary files.

two options for responding: (1) either produce personnel file documents "reflecting that the decision makers/supervisors engaged in or were charged with the same infractions or violations and the disposition of any charges;" or (2) apply to the Court to withhold documents on the ground that "the age or other circumstances concerning the infraction or violation render it irrelevant." (*Id.*)

The May 15 Order therefore addressed Plaintiffs' allegations of disproportionate discipline, the only allegations before the Court. Nevertheless, in a letter dated May 27, 2008, Plaintiffs set forth: (1) any discipline, charges or letter of instruction received by any of them during their entire MTA PD careers; (2) allegations regarding discipline or charges of misconduct Plaintiffs claim were also assessed against the supervisors; and (3) allegations attempting to demonstrate that the supervisors were comparators to Plaintiffs with respect to other terms and conditions of employment, such as promotions, overtime earnings, and commendations.[4] Despite the May 15 Order, Plaintiffs now seek to expand their rationale for seeking the disciplinary records of supervisors to obtain discovery of their entire personnel files. Defendants oppose the disclosure of the supervisors' personnel files for the reasons set forth below.

---

[4] A copy of Plaintiffs' May 27, 2008 letter is attached to the Fuchs Decl. as Exhibit B.

2

### III. THE REQUESTED CONFIDENTIAL PERSONNEL AND DISCIPLINARY RECORDS ARE NOT RELEVANT TO PLAINTIFFS' DISPARATE TREATMENT CLAIMS.

Defendants are not required to disclose confidential MTA PD personnel documents, unless they contain relevant information from which a fact-finder could conclude that unlawful disparate treatment exists. *Rifkinson v. CBS, Inc.*, Case No. 94 Civ. 7985 (KTD), 1995 WL 614565 (S.D.N.Y. October 18, 1995) (discovery was limited as to similarly situated categories of employees and restricted as to other categories of employees until the plaintiff could demonstrate that such other categories were similarly situated to her); *Shah v. James P. Purcell Associates, Inc.*, Case No. 3:05 Civ. 306 (PCD), 2006 WL 988245 (D. Conn. April 12, 2006) (limiting discovery of personnel files to those files of similarly situated employees); *Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir. 1994) (district judge properly exercised discretion to curtail discovery of personnel files, after determining that the other employees were not sufficiently similarly situated to plaintiff to warrant disclosure of private personnel records); *Banks v. CBOC, West, Inc.*, No. 01 C 0795, 2003 WL 1888844 (N.D. Ill. April 19, 2003) (request for discovery of the file of every employee found to have violated security policies is overbroad, because management and non-management employees were not similarly situated).

Plaintiffs seek disclosure of the personnel files of the 11 supervisors who they claim engaged in acts of discrimination. In this case, the production of MTA PD personnel files is governed by the Court's December 17, 2007 Stipulated Order (the "December 17 Order"), allowing production only of such documents that are "relevant and material" to the claims raised in the Complaint.[5] The intent of the December 17 Order was to balance the disclosure

---

[5] A copy of the December 17 Order is attached as Fuchs Decl. Exhibit C.

3

requirements of Fed. R. Civ. P. 26(b)(1) ("Rule 26(b)(1)") with the privacy concerns embodied in New York Civil Rights Law § 50-a ("Section 50-a"). Section 50-a restricts the disclosure of personnel files of police officers that may be used to evaluate them for promotion or continued employment, unless certain procedural requirements are met. Federal courts balancing Section 50-a and Rule 26(b)(1) have required a demonstration of relevancy prior to ordering the disclosure of personnel files of police officers. *See, e.g., Martin v. Lamb*, 122 F.R.D. 143, 147-48 (W.D.N.Y. 1988) (requiring *in camera* review of materials in dispute to determine relevancy); *Mercado v. Division of New York State Police*, 989 F.Supp. 521, 523 (S.D.N.Y. 1998) (performance evaluations were not relevant to plaintiffs' discrimination claims).

As set forth in their May 27 letter, Plaintiffs do not appear to seek the supervisors' personnel files to support their individual claims of disparate treatment. Rather, Plaintiffs seek such files to support their contention that this group of supervisors received favorable treatment throughout their employment with MTA. However, these supervisors are not similarly situated in any way with Plaintiffs. None of the supervisors were employed in the same positions as the Plaintiffs at the time they allegedly engaged in misconduct or when they received the assignments or promotions Plaintiffs claim they were denied. The decisions to assess discipline against Plaintiffs and that which may have been assessed against the supervisors were not made by the same individuals during the same time periods. Plaintiffs also cannot show that these supervisors were promoted to positions or given assignments for which Plaintiffs applied and were rejected. Rather, such allegations of "favorable treatment" of the supervisors relate only to Plaintiffs' inappropriate "class action" allegations of "pattern or practice" discrimination by the MTA.

This case is devoid of any class action claims, and as such, discovery of this type is

4

inappropriate and unwarranted. See, e.g., *Brown v. Coach Stores Inc.*, 163 F.3d 706, 711 (2d Cir. 1998) (plaintiff could not rely upon pattern or practice of discrimination pleading requirements, as he did not bring a class action); *Davis v. Coca-Cola Bottling Consolidated*, 516 F.3d 955, 964-70 (11th Cir. 2008) (holding that pattern or practice claims may only be brought as a class action).

Plaintiffs' request for the personnel files of supervisors is flawed, because it assumes that merely alleging that a supervisor engaged in discriminatory conduct somehow renders him a comparator to Plaintiffs with respect to claims of disproportionate discipline and other allegations of disparate treatment. But these supervisors are not comparators to Plaintiffs unless they are "similarly situated" to Plaintiffs "in all material respects."[6] Because these supervisors are not similarly situated to Plaintiffs as a matter of law, the disciplinary and other records sought are not relevant here and should not be produced.

### A. Disciplinary Action Against the Plaintiffs

#### 1. Plaintiffs' Claims of Disproportionate Discipline are Time-Barred.

In support of their efforts to discover the disciplinary records of Defendants' supervisors, Plaintiffs set forth violations or charges assessed against them since the commencement of their employment as Police Officers, going back as far as 1983. For example, Plaintiffs allege that Plaintiff Blake Willett was charged with 12 separate violations resulting in disciplinary action or warnings, commencing in May 1983 and ending in November 1993. These and many of the disciplinary actions alleged by Plaintiffs occurred years before the four-year limitations period applicable to this case, and, indeed, years before the creation of the MTA PD in January 1998.[7]

---

[6] *Murray v. Visiting Nurse Service of New York*, 528 F.Supp.2d 257, 269 (S.D.N.Y. 2007) (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)).
[7] In 1998, pursuant to the New York State Public Authorities Law, the New York State Legislature created the MTA PD. N.Y. Pub. Auth. Law § 1266-h. In accordance with the statute creating it, the MTA PD was comprised of all of the incumbent members of the Long Island Rail Road Company ("LIRR") and the Metro-North Commuter Railroad

As such, these actions are discrete events with no bearing upon Plaintiffs' allegations of disproportionately harsh discipline occurring during the limitations period. In that regard, the disciplinary files of the supervisors and decision makers whose files Plaintiffs now seek are irrelevant to this case.[8] Indeed, of all the incidents listed by Plaintiffs, only ten occurred within the limitations period, and only three of those resulted in any disciplinary action beyond a written warning or letter of instruction.[9] All other allegations of discipline by the Plaintiffs are time-barred and irrelevant.

### 2. Plaintiffs Have Not Identified Any Supervisors who Are Similarly Situated to Them.

Plaintiffs' May 27 letter sets forth every infraction, violation, assessment of discipline, written warning and letter of instruction contained in each of their personnel files, without identifying how the supervisors whose files they seek are similarly situated to them. They now seek disclosure of all discipline, complaints, charges, violations, or warnings assessed against the supervisors for any comparable discipline or charges. However, Plaintiffs have failed to identify, as the Court directed, which, if any, of those alleged disciplinary actions was disproportionately harsh on the basis of race. (Fuchs Decl. Ex. A at p.3, paragraph 2). Without a showing of

---

Company ("Metro-North") Police Departments. In that regard, effective January 1, 1998, eight of the ten plaintiffs in this action, together with every other member of the LIRR and Metro-North Police Departments, transferred to and became employees of the MTA.

[8] Plaintiffs cannot establish a continuing violation based upon these distinct acts of discipline and instruction. The statute of limitations in disparate treatment cases begins to run when each discrete act of discrimination occurs. *Ledbetter v. Goodyear Tire and Rubber Co., Inc.* ___ U.S. ___, 127 S.Ct. 2162, 2169 (2007); *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 110-111 (2002).

[9] With respect to these three disciplinary actions, Plaintiff's claim that (1) Plaintiff Marilyn Armstrong received a two-day suspension for leaving a sick leave location; (2) Henry received a suspension of 40 hours reduced to a letter of instruction recommending training assessed for sending an email containing sensitive security information to a civilian, and (3) Plaintiff Michael Benjamin received a five-day suspension for insubordination. Defendants' records show that the penalty assessed against Benjamin was a 12-hour suspension reduced to six hours after an arbitration proceeding. (Fuchs Decl. ¶ 6, Ex. D).

6

relevancy, Plaintiffs are not entitled to disclosure of the supervisors' disciplinary records.[10]

Plaintiffs' request for disclosure of documents relating to discipline or charges assessed against MTA PD supervisors is flawed. Here, the supervisors are not similarly situated to Plaintiffs unless (1) the supervisors held the same position as Plaintiffs at the time of the charges; and (2) the same individuals who evaluated and assessed the disciplinary action, if any, imposed against Plaintiffs assessed the action to be taken against the supervisors for the same conduct.

In any event and notwithstanding the above, an examination of the personnel files of the supervisors in question reveals that these supervisors were only disciplined with respect to two types of violations that are arguably comparable to those violations for which disciplinary action was assessed against any of the Plaintiffs during the four-year limitations period.

### a.   Motor Vehicle Accidents

Specifically, Plaintiff Gordon Urquhart ("Urquhart") was assessed disciplinary action or received a letter of instruction on three occasions in connection with a motor vehicle accident. Only one of these accidents occurred within the limitations period, for which Urquhart, a Detective, received a letter of instruction. (Fuchs Decl. Ex. B at p. 3).

A review of the records shows that only three supervisors whose files are sought by

---

[10] Plaintiffs' list of "disproportionate discipline" also includes infractions for which they did not arguably suffer any adverse action. Specifically, they identify charges for which the alleged "disproportionate discipline" is only "penalty unknown," or for which a letter of instruction or a written warning or reprimand was issued, as opposed to discipline resulting in a material change in the terms or conditions of employment, such as a suspension, demotion, loss of compensation or benefits. Plaintiffs list four violations against Plaintiff Marilyn Armstrong for which the alleged disproportionate penalty is "unknown." Plaintiff Lillian Alvarado was allegedly suspended on two occasions, where the suspensions were reduced to a written reprimand or withdrawn altogether. (Fuchs Decl. Ex. B at pp. 2-3). As written warnings or letters of instruction "do not 'alter[] the terms or conditions of the plaintiff's employment in a materially negative way,' they are not adverse employment actions." *Bynog v. SL Green Realty Corp.*, No. 05 Civ. 0305 WHP, 2007 WL 831740, (S.D.N.Y. March 20, 2007) (quoting *Patrolman's Benevolent Association of New York v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002)). *A fortiori*, they cannot represent disproportionate discipline, and cannot support Plaintiffs' allegations of disparate treatment on the basis of discipline. Plaintiffs cannot justify d
iscovery of confidential personnel files of Defendants' supervisors based upon their receipt of written warnings, as they are not relevant to their allegations of disproportionate discipline.

7

Plaintiffs were involved in motor vehicle accidents. One of those supervisors was in an accident occurring in 1982, while she was a uniformed police officer and an employee of Metro-North's predecessor railroad, Conrail, and 16 years before the creation of the MTA PD. (Fuchs Decl. ¶7). Such an incident is so remote in time as to be irrelevant as a matter of law. Another supervisor at issue was involved in a motor vehicle accident in 2006. (Fuchs Decl. ¶8). This supervisor was an Inspector at the time (*Id.*), and any action taken in response to his involvement in a motor vehicle accident in 2006 is irrelevant to the fact that Urquhart, a Detective, received a letter of instruction for being involved in a motor vehicle accident in 2004. The third and final supervisor at issue received a five-day suspension for a motor vehicle accident occurring in 1997, also before the creation of the MTA PD, at a time when he was a Detective Sergeant. (Fuchs Decl. ¶9) Not only is the disciplinary action taken against this supervisor harsher than any imposed upon Urquhart for a motor vehicle accident, it is so remote in time that it is irrelevant.

### b. Breach of Confidentiality

Additionally, Plaintiff Bryan Henry ("Henry") received a letter of instruction recommending training in February 2006 for emailing a civilian confidential security information. (Fuchs Decl. Ex. B at p. 3). Our review of the records shows that one supervisor whose file Plaintiffs seek was disciplined in August 1989, while he was employed by Metro-North, for discussing an investigation with a civilian Metro-North employee. (Fuchs Decl. ¶11). Such a time-barred incident, occurring over 16 years before any disciplinary action was taken against Henry, was wholly unrelated to the assessment of discipline by any of the same decision makers involved in assessing discipline against Henry. Accordingly, this incident is irrelevant to Henry's claims.

### c. Allegations of Misconduct by the Supervisors are Not Relevant to Plaintiffs' Claims

Plaintiffs also seek to justify the production of the supervisors' personnel files by citing alleged misconduct of the supervisors completely unrelated to any misconduct for which the Plaintiffs claim they were disproportionately disciplined. Such allegations are irrelevant and do not warrant disclosure of the supervisors' personnel files.

Specifically, Plaintiffs allege that (1) Assistant Deputy Chief Kathleen Finneran did not report to work for one month in or around 1989; (2) retired Lieutenant Timothy Harmon abused alcohol while working, without resulting in disciplinary action; (3) Inspector Thomas Dunn was (a) investigated for having his daughter transported in police vehicles; and that (b) at an unspecified time, he discharged his weapon while driving on a highway "and as a result was fired for fifteen minutes then rehired;" and (4) Inspector Robert Terrett was charged with improper use of a police computer system, known as NYSPIN, and as a result, he voluntarily took a demotion from Captain to Lieutenant.[11]

Even if these allegations were accurate, which Defendants deny, they are each irrelevant to Plaintiff's claims. Such incidents bear no comparison or similarity to any conduct for which any of the Plaintiffs alleges that he or she received disciplinary action during the limitations period.

Based upon Plaintiffs' submissions, the May 15 Order addressed further discovery of the supervisors' personnel records only in terms of Plaintiffs' allegations of disproportionate discipline. Plaintiffs now claim that certain supervisors are their comparators with respect to other claims as well. Although these claims exceed the scope of the May 15 Order, Defendants

---

[11] To the extent that Plaintiffs allege that Inspector Terrett was demoted as a result of this alleged conduct, none of the Plaintiffs has asserted a claim that they were demoted as a result of unlawful discrimination.

address them below.

Specifically, Plaintiffs allege that: (1) Inspectors Robert Terrett and Thomas Dunn are comparators to Henry as to promotions; (2) Detective Sergeants Karen Taylor and Peter Cummo are comparators to Plaintiff Nzingha Kellman with regard to her claim that she was denied appointment to the position of Detective Sergeant; (3) Detective Sergeant James Flanagan is a comparator to Urquhart and Plaintiff Kenneth Davis as to overtime pay; and (4) Assistant Deputy Chiefs Kathleen Finneran and Terrence Culhane are generally comparators to unidentified Plaintiffs as to the commendations they received. Plaintiffs claim that based on these claims, they are similarly situated to these supervisors, warranting disclosure of the supervisors' confidential personnel records. As set forth below, each group of supervisors is not similarly situated to any of the Plaintiffs, and therefore, the supervisors' files should not be disclosed.

### 2. Henry's Alleged Comparators

Plaintiffs allege that Inspectors Terrett and Dunn are comparators to Henry because Terrett and Dunn allegedly held the rank of Captain prior to 2003, as did Henry.[12] Plaintiffs claim that Terrett, Dunn and Henry had agreed to a reduction in rank from Captain to Lieutenant, but that Dunn and Terrett, unlike Henry, were later promoted back to a District Command position in 2004.[13]

However, the promotions of Dunn and Terrett in July 2004 are irrelevant because Henry failed to apply for a promotion, which position was openly posted, when they did. Dunn and Terrett submitted applications called "abstracts" in response to June 16, 2004 Personnel Orders issued to all Lieutenants soliciting applications for "Captain-District Commander," Deputy

---

[12] Plaintiffs further allege that Henry applied for but was denied promotion to Captain in 2007 when Fitzpatrick was promoted to Captain. Fitzpatrick was promoted to Captain in 2007, the same year Henry applied for but was not selected for that position. Defendants will produce relevant documents from Fitzpatrick's personnel file with respect to Henry's promotion claim.

[13] In the MTA PD, a District Command position means that the MTA PD member holds the rank of Captain or higher.

Inspector and Inspector (Fuchs Decl. ¶ 12,13, Ex. E), and were thereafter selected for promotion. (Fuchs Decl. Ex. F). Henry did not do so. Rather, he applied for promotion to Captain in 2007 in response to a later request. (Fuchs Decl. ¶14). Because Henry failed to apply for promotion to Captain in 2004 when given notice of the opportunity to do so, he cannot state a *prima facie* case of disparate treatment, and production of the records of those who were promoted to the Captain position in 2004 is not warranted.[14] Because Dunn and Terrett are not similarly situated to Henry in this material respect as a matter of law, their files should not be produced.

### 3. Kellman's Claim Regarding the Detective Sergeant Position

Plaintiffs allege that Detective Sergeants Taylor, Cummo and Fitzpatrick are similarly situated to Kellman, because they were appointed to Detective Sergeant, allegedly "in and around the years of 2002-03 without previous Detective experience" while Kellman was not selected.[15] However, Kellman never applied to be Detective Sergeant either in or before 2003. Kellman expressly admits in the Amended Complaint that she only submitted abstracts for the position in June and July 2004 and September 2005. (Amended Complaint. ¶¶ 147-48)). Taylor was appointed Detective Sergeant in November 2003, after responding to a request for abstracts for the position issued in September 2003, a request to which Kellman did not respond. (Fuchs Decl. Exs. G, H). Cummo became a Detective Sergeant in August 1999. (Fuchs Decl. ¶16). Kellman did not seek appointment to Detective Sergeant until July 2004, when she competed with an entirely different field of candidates.

---

[14] To state a *prima facie* case of discrimination for failure to promote, a Plaintiff must demonstrate (1) he was a member of a protected class; (2) he applied for and was qualified for a job for which the employer was seeking applicants; (3) he was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the Plaintiff's qualifications. *Petrosino v. Bell Atlantic*, 385 F.3d 210, 226 (2d Cir. 2004) (citing *Brown v. Coach Stores Inc.*, 163 F.3d 706, 709 (2d Cir. 1998) (quoting *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[15] As to Fitzpatrick, Defendants will produce the relevant records from his file with respect to Henry's claim for promotion to Captain but Defendants do not concede the relevance of his records to Kellman's claim with respect to appointment to Detective Sergeant.

Moreover, by 2005, the last time Kellman applied to become a Detective Sergeant, the stated criteria for selection to that position had changed. As reflected in the Request for Consideration to which Kellman responded in October 2005, Detective experience became a desired criterion, and completion of the Criminal Investigators Course was a requirement. (Fuchs Decl. Ex. I). These requirements were not set forth in the 2003 request to which Taylor responded.[16] Accordingly, Kellman was considered for Detective Sergeant at a later time than Taylor and Cummo, competed against a different field of candidates, and was evaluated by different interviewers[17] applying different criteria. Kellman thus is not similarly situated to Taylor and Cummo as a matter of law, and therefore, their files are irrelevant and their production is unlikely to lead to the discovery of admissible evidence.

### 4. Alleged Comparators to Plaintiffs Urquhart and Davis

Plaintiffs claim that Detective Sergeant James Flanagan is similarly situated to Plaintiffs Urquhart and Davis, because they were all assigned to the Inter-Agency Counterterrorism Task Force ("ICTF"), and Flanagan allegedly earned more overtime. Plaintiffs allege that because Urquhart and Davis were denied high-profile case assignments, they received less opportunity to earn overtime.

First, Flanagan was not similarly situated to Urquhart and Davis, both retired Detectives, because Flanagan, a Detective Sergeant, was the supervisor of Urquhart and Davis in the ICTF during the limitations period, and as such was responsible for the assignment of cases in that unit. Specifically, he was promoted to the supervisory Detective Sergeant position in the ICTF

---

[16] *Compare* Fuchs Decl. Exs. H and I.

[17] Interviews of candidates for the Detective Sergeant position in 2003 were conducted by then Lieutenant Stephen Conner, and Detective Sergeants John Rizitelli and Kim Riley. In 2004, Conner, Fitzpatrick, and Detective Sergeant Brian Sullivan interviewed candidates for Detective Sergeant. In 2005, Conner and Jesse Crawford, MTA Assistant Director of Employment and Compensation Services, conducted the interviews. (Fuchs Decl. ¶18).

12

in December 2003, near the beginning of the four-year limitations period applicable in this matter. (Fuchs Decl. Ex. J ).[18]

Significantly, Plaintiffs do not claim that Urquhart and Davis applied for the Detective Sergeant position when Flanagan was selected for that position. Rather, they claim that Flanagan, as a Detective Sergeant who supervised Urquhart and Davis, overseeing the cases they and the other Detectives in ICTF handled, received more overtime. Plaintiffs essentially allege that Flanagan kept the cases which would likely lead to overtime opportunities rather than delegating them to Urquhart and Davis. While Defendants have no reason to believe this occurred, even if true, such an assignment of the work is irrelevant to Plaintiff's allegations of race discrimination. Plaintiffs claim that Flanagan sought to increase his personal earnings by incurring more overtime. Urquhart and Davis were Detectives with no supervisory responsibilities for the cases assigned to others. Flanagan is simply not similarly situated to them.[19]

### 5. Kathleen Finneran and Terrence Culhane are Not Comparators to Any of the Plaintiffs.

Plaintiffs assert that "upon information and belief" Assistant Deputy Chief Kathleen Finneran and Assistant Deputy Chief Terrence Culhane received commendations denied to unidentified Plaintiffs for achievements equal to or lesser than the unspecified Plaintiffs' achievements. Plaintiffs supply no details to allow either the Court or Defendants to address this allegation. None of the Plaintiffs specify: (a) what commendations they allege they were denied; (b) what commendations they believe Finneran or Culhane were granted that Plaintiffs did not

---

[18] *Jones v. R.R. Donnelley & Sons Company*, 541 U.S. 369, 382-384 (2004) (four year statute of limitations applies to claims under 42 U.S.C. § 1981). Plaintiffs commenced this action on May 4, 2007. (Fuchs Decl. ¶21).
[19] Notably, neither Flanagan's overtime earnings nor the nature of his case assignments are set forth in his personnel file. Defendants have already produced documents showing the overtime earnings of MTA PD members, including Flanagan, from 2003 through 2007. (Fuchs Decl. ¶14).

13

receive for similar or lesser achievements; (c) when these commendations were allegedly granted or were denied; or (d) who granted or denied them.

Finneran and Culhane are both Assistant Deputy Chiefs who commenced employment in 1981 and 1984, respectively, and have received commendations and letters of praise over the years, as have many of the Plaintiffs. None of the Plaintiffs are or were Assistant Deputy Chiefs or allege that they ever applied for the position of Assistant Deputy Chief. Rather, two of the Plaintiffs are Police Officers, six are Detectives (or retired Detectives), one is a Sergeant and one a Lieutenant.[20] Without relevant detail, neither Defendants nor the Court can determine whether Finneran or Culhane's files contain relevant information. Plaintiffs' bald allegation is not a proper basis to warrant discovery of the confidential personnel files of these two high level supervisors.

Accordingly, the personnel files of these supervisors should not be produced.

## IV.   CONCLUSION

As set forth above, the personnel files and disciplinary records of MTA PD supervisors and decision makers Plaintiffs request are irrelevant to Plaintiffs' individual claims of disparate treatment. The supervisors are not similarly situated to the Plaintiffs as a matter of law. Plaintiffs' request to discover confidential records protected by Section 50-a and Rule 26 of the Federal Rules of Civil Procedure should be denied, where as here such records are irrelevant, time-barred and not calculated to lead to the discovery of admissible evidence.

---

[20] The hierarchy of member rankings in the MTA PD is (1) Police Officer or Detective; (2) Sergeant or Detective Sergeant; (3) Lieutenant; (4) Captain; (5) Deputy Inspector; (6) Inspector; (7) Assistant Deputy Chief; and, finally (8) Chief of Police.

Respectfully submitted,

/s/_____
Craig R. Benson
Stephen A. Fuchs
LITTLER MENDELSON
  A Professional Corporation
885 Third Avenue, 16th Floor
New York, NY 10022.4834
212.583.9600

Dated: July 8, 2008
New York, New York

Attorneys for Defendants
Metropolitan Transportation Authority,
Elliot Sander, William Morange, Kevin
McConville, and Terrence Culhane

Firmwide:85796358.1 039247.1016
7/7/08 5:34 PM