UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------------X

Marilyn Armstrong, Marshall R. Mazyck,
Lilian Alvarado, Gordon Urquhart,
Blake J. Willett, Bryan Henry, Kenneth            Civil Action No. 07 3561(GEL)(HBP)
Davis, Eric Moore, Nzingha M. Kellman,            ECF Case
and Michael Benjamin

                        Plaintiffs,

                       -against-

Metropolitan Transportation Authority,
Elliot Sander, Executive Director and Chief
Executive Officer of the MTA, William
Morange, Deputy Executive Director/Director
of Security of the MTA, Kevin McConville,
Chief of the MTA Police Department, and
Terrance Culhane, Assistance Deputy Chief
of the MTA Police Department.

                       Defendants.

-----------------------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
APPLICATION TO WITHHOLD PERSONNEL FILES OF SUPERVISORS**

TABLE OF CONTENTS

PAGE

I. PRELIMINARY STATEMENT………………………………………………………… 1

II. ARGUMENT……………………………………………………………………………..3

    1. Defendants Have Failed to Establish that the Requested Production is Irrelevant…………………………………………………………………………....3

    2. Plaintiffs are Entitled to Documents from Supervisors' Personnel Files Related to Disciplinary Violations……………………………………………………………..5

        a. Supervisors are Similarly Situated to Plaintiffs with Regard to Discipline…………………………………………………………………...6

        b. Documents Pertaining to Incidents Which Occurred Prior to the Statutory Period are Discoverable………………………………………………………8

    3. Plaintiffs are Entitled to Documents from the Supervisors' Personnel Files Related to Career Opportunities and Advancement………………………………………………9

        a. Supervisors are Similarly Situated to Plaintiffs with regard to Career Opportunities and Advancement…………………………………………....9

III. CONCLUSION……………………………………………………………………………12

i

## TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Carter v. Ball,* 33 F.3d 450 (4th Cir. 1994) ……………………..……………...……..4

*Graham v. Long Island R.R,.* 230 F.3d 34 (2d Cir. 2000)………………………....……6, 7, 8

*Hughes v. United Parcel Service, Inc.,* 798 N.Y.S.2d 344 (N.Y. Sup. 2004)…………………….6

*Jhirad v. TD Securities USA, Inc.*, 2003 WL 1872654 (S.D.N.Y. April 10 2003)……………….4

*Khan v. Sanofi-Synthelabo, Inc.,* 2002 WL 31720528 (S.D.N.Y. December 3, 2002)………....…5

*Ladson v. Ultra East Parking Corp.,* 164 F.R.D. 376 (S.D.N.Y. 1996). ……………………..….…4

*Lieberman v. Gant*, 630 F.2d 60, 68 (2d Cir.1980)……………………………………….…..4,5

*Lineen v. Metcalf & Eddy, Inc.*,1997 WL 73763 (S.D.N.Y. February 21, 1997)…………..……..4

*Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742 (4th Cir. 1998)…………………………….4, 5

*Lynn v. Deaconess Medical Center-West Campus,* 160 F.3d 484 (8th Cir. 1998)………..………8

*McDonnell Douglas Corp. v. Green*, 93 S. Ct. 1817, 804 (S. Ct. 1973)..…………………..….…8

*McGuinness v. Lincoln Hall,* 263 F.3d 49 (2d Cir. 2001). …………………………..….……7

*Moss v. Blue Cross and Blue Shield of Kansas, Inc.,* 241 F.R.D. 683 at 698 (D. Kan. 2007)..…12

*Murphy v. Board of Educ. of Rochester City School Dist.,* 2000 WL 33945849 (W.D.N.Y 2000)…………………………………………………………………………………………….....12

*Nakis v. Potter,* 422 F.Supp.2d 398 (2006)……………………………………………….......……5

*National Rail Road v. Morgan,* 536 U.S. 101 (2002)……………………………………….........5

*Rifkinson v. CBS Inc.,* 1995 WL 614565 (S.D.N.Y. 1995)……………………….……….……4

*Shumway v. United Parcel Service, Inc.,* 118 F.3d 60 (2d Cir. 1997)…………………………….6

*Smith v. New Venture Gear, Inc. Slip Copy*, 2008 WL 200015 (N.D.N.Y. January 22, 2008) …..9

*Tucker v. Gonzales* 2005 WL 2385844 (S.D.N.Y., September 27, 2005)…………………....…4

## **PRELIMINARY STATEMENT**

Plaintiffs submit this memo in opposition to defendants' application to withhold the personnel files of Kevin McConville, Terrance Culhane, John Fitzpatrick, James Flannagan, Kathleen Finneran, Timothy Harmon, Thomas Dunn, Robert Terrett, Kim Riley, Peter Cummo and Karen Taylor. Plaintiffs contend that personnel documents related to disciplinary violations and career opportunities/advancement of the above-listed supervisors are "relevant and material" to their claims and respectfully request that the Court compel their disclosure.

Throughout the course of discovery, plaintiffs have requested the personnel files and disciplinary histories of these supervisors/decision makers. Defendants initially objected to plaintiffs' request claiming that prior to the satisfaction of procedural requirements, New York Civil Rights Law §50-a prohibited disclosure of personnel documents. The parties then brought this matter before Judge Lynch, who on December 17, 2007, signed a Stipulated Order for the Protection and Exchange of Documents Covered by New York Civil Rights Law §50-a [1] ("§50-a Order") which cured the procedural pre-conditions to disclosure. Despite the §50-a Order, the defendants continued to resist disclosure and the parties sent a joint letter to Judge Lynch on May 5, 2008, asking the Court to intervene.[2] The letter was then sent to this Court and a conference was held on the matter on May 14, 2008.

During the Conference on May 14, 2008 ("May 14th Conference"), the Court ordered the defendants to either produce the requested files or make an application to the Court to withhold production. The defendants have since produced documents related to comparator officers but have maintained their objection to the disclosure of supervisory files. Following the conference, on May 27, 2008, plaintiffs submitted a letter ("May 27th letter") to the defendants (Fuchs, Dec,

---

[1] A copy of the 50-a Order is annexed to the Declaration of Stephen Fuchs, dated ("Fuchs Dec") Exhibit C
[2] A copy of the May 5, 2008 letter is annexed to the Declaration of Rachel Nicotra ("Nicotra Dec") Exhibit 1

1

Exhibit B) pursuant to the Court's Order, listing the disciplinary infractions and violations contained in each of the plaintiff's personnel files as provided by the Metropolitan Transportation Authority Police Department ("MTA PD"). Plaintiffs also provided a list of acts which we have reason to believe were committed by the above-listed supervisors. Plaintiffs also reiterated, and expounded upon, their previously made argument that the supervisors are comparators to the plaintiffs with regard to the disparate allocation of career opportunities and career advantages.

Defendants now argue that disclosure is not mandated because the requested material is not "relevant and material" as defined in the §50-a Order.[3] However, neither §50-a, nor the Stipulated Order for the Protection and Exchange of Confidential Information dated November 30, 2007, preclude the production of the requested files. To the contrary, the Orders limit any potential harm that could be claimed as a result of the production of the requested documents.

Since the documents requested are "relevant and material" to plaintiffs' claims as set forth in their Amended Complaint (including allegations of disparate treatment, hostile work environment, systemic and pervasive discrimination within the MTA PD, and a pattern and practice of racial discrimination which has arisen as a result of the MTA PD's failure to take remedial action) the Court should deny the defendants' application to withhold production.

---

[3] The §50-a Order states that the "MTA may produce…relevant and material to the claims set forth in the Amended Complaint…notwithstanding that such documents may be documents within the scope of new York Civil Rights Law §50-a" and allowing such documents to be designated as 'Confidential' or 'For Expert Eyes/Attorney Inspection Only.'"( Fuchs Dec. Exhibit C)

2

## ARGUMENT

**1. Defendants have failed to establish that the requested production is irrelevant:**

This Court recognized during its May 14th Conference that "the law with respect to discovery…is that the party resisting discovery ordinarily bears the burden of establishing that the discovery sought is inappropriate." (Nicotra Dec. Exhibit 1, 9:5-8). In the context of comparator officers, the Court recognized that determination of whether an employee was similarly situated—so as to make evidence probative of disparate treatment—was a matter of fact to be assessed by a jury. Thus, the Court required that defendants make a showing that the alleged comparators are "so differently situated" from the plaintiffs "that no reasonable jury could find that they're comparators."

The defendants have not met this burden; they have not refuted plaintiffs' allegations that supervisors are similarly situated with regard to discipline and career opportunities as set forth in plaintiffs' May 27th letter.

In Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Disclosure of Personnel Files of Supervisors ("Def. Mem."), defendants claim that they "are not required to disclose confidential MTA PD personnel documents unless they contain relevant information from which a fact-finder could conclude that unlawful disparate treatment exists."[4] Def. Mem. p3. Thus, the defendants ignore the requirement set forth by the Court with regard to resisting disclosure for similarly situated employees and make an assertion that is contrary to the policies of federal discovery. Courts in this district have held that discovery rules "are to be

---

[4] In order to support this proposition defendants cite to *Rifkinson v. CBS Inc.,* 1995 WL 614565, *1 (S.D.N.Y. Oct. 18, 1995) claiming that the case stands for the precept that plaintiffs bear the burden of establishing that employees are similarly situated to compel production. But in *Rifkinson,* the court held that although the categories suggested by the employer to justify the withholding of were reasonable that "this principle should not be used to create arbitrary limitations on discovery." *Id.* Even after this determination, the Court did not foreclose the plaintiff from further discovery. "Additional discovery may be warranted if the plaintiff can show that other categories of CBS employees are similarly situated to her." *Id..* The Court further held that broader disclosure may be required if the employer was unable to segregate information with respect to designated categories. *Id.*

3

construed liberally in Title VII cases in order to provide employees with broad access to employers' records." *Ladson v. Ultra East Parking Corp.,* 164 F.R.D. 376, 378 (S.D.N.Y. 1996); *see also Lineen v. Metcalf & Eddy, Inc.* 1997 WL 73763, *3 (S.D.N.Y. 1997).

Defendants also contend that plaintiffs are not entitled to evidence in support of allegations of 'pattern or practice' discrimination because they have not been certified as a class and additionally that they cannot obtain discovery on incidents occurring prior to the statutory period. However, while individual plaintiffs may not be able to maintain a Title VII claim based on 'pattern or practice,'[5] courts have held that evidence establishing 'pattern or practice' discrimination is admissible to individual plaintiffs. In a frequently cited case, *Lowery v. Circuit City Stores, Inc.,* the Fourth Circuit listed the ways in which 'pattern or practice' evidence of discrimination was relevant to an individual's claim of employment discrimination:

> Evidence of a pattern or practice of discrimination may very well be useful and relevant to prove the fourth element of a *prima facie* case, that the individual's adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination, *see Carter,* 33 F.3d at 458; *Alvarado,* 928 F.2d at 121, or that the employer's articulated reasons for the adverse action was merely pretext, *see Carter,* 33 F.3d at 456, or to establish the plaintiff's ultimate burden. *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742, 761 (7th Cir. 1998).

The Second Circuit has specifically held that "evidence of general patterns of discriminatory treatment by an employer is relevant even in the individual disparate treatment case." *Lieberman v. Gant*, 630 F.2d 60, 68 (2d Cir. 1980). In a subsequent case, this Court found that "evidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive." *Jhirad v. TD*

---

[5] *Tucker v. Gonzales,*, 2005 WL 2385844, *4 (S.D.N.Y., Sept. 27, 2005): "The Supreme Court has not specifically addressed the issue of whether an individual plaintiff may maintain a Title VII claim on a pattern or practice basis." *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742, 761 *(*4th Cir.1998), *vacated on other grounds,* 527 U.S. 1031 (1999).

4

*Securities USA, Inc.*, 2003 WL 1872654, *3 (S.D.N.Y. April 10, 2003). See *also Khan v. Sanofi-Synthelabo, Inc.,* 2002 WL 31720528, *4-5 (S.D.N.Y. December 3, 2002).

Further, this Court, during the May 14th Conference recognized that under *National Rail Road v. Morgan,* 536 U.S. 101 (2002)*,* evidence of past discrimination could be probative as to the intent and motivation of the employer with regard to actionable claims. (Nicotra Dec. Exhibit 1, 11:1-9.) *Morgan* held that prior discriminatory acts could be used as "background evidence in support of a timely claim." *Morgan* at 113. This Court also held in *Nakis v. Potter* that "[t]ime-barred conduct may still be offered as evidence of discriminatory intent to support timely claims." *Nakis v. Potter* 422 F.Supp.2d 398*,* 410 (S.D.N.Y. 2006).

Plaintiffs have requested the files of supervisors in order to support their claims of systemic discrimination as alleged in the Amended Complaint. There plaintiffs claim that that the MTA PD has engaged in, and has condoned, policies that lead to unbridled discretion of supervisors resulting in discriminatory conduct and then by failing to take remedial action has created a policy or practice of discrimination.[6] Thus documents that evince systemic discrimination are relevant to plaintiffs' claims.

2. **Plaintiffs are entitled to documents from the supervisors' personnel files related to the disciplinary violations:**

Plaintiffs have requested the disciplinary histories and civilian complaints for the named supervisors. Plaintiffs alleged in their May 27th letter that they were subjected to disparate treatment based on the fact that the named supervisors had engaged in more egregious acts and

---

[6] "The continuing violation doctrine can be satisfied if plaintiff establishes either an ongoing practice or policy of discrimination or the existence of specific acts of discrimination that are permitted by an employer to go unremedied for so long so as to amount to a policy or practice." *Hughes v. United Parcel Service, Inc*. 798 N.Y.S.2d 344, page number (N.Y. Sup. 2004).

5

received lenient penalties.[7] Plaintiffs provided defendants with an extensive list of reprimanded infractions such lateness, lost property, improper memo book entries, insubordination, failure to prevent motor vehicle accidents, disclosure of sensitive information, and fighting on duty. (Fuchs Dec, Exhibit B). Despite the varied array of infractions, defendants object to the disclosure of the records, based on the contention that the supervisors are not similarly situated with regard to any of the above.

### a. Supervisors are similarly situated to plaintiffs with regard to discipline.

Defendants state, without citing to any authorities, that "the supervisors are not similarly situated to plaintiffs unless 1) the supervisors held the same position as the plaintiffs at the time of the charges, and 2) the same individuals who evaluated and assessed the disciplinary action, if any, imposed against Plaintiffs assessed the action to be taken against the supervisors for the same conduct." (Def. Mem., page 7.) This assertion is contrary to legal precedent.

In *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000), and in other subsequent cases following *Shumway v. United Parcel Service*, 118 F.3d 60, 64 (2d Cir. 1997), courts in the Second Circuit have held that to find that employees are similarly situated with regard to discipline, a Court should make a case-by-case determination considering 1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and 2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Graham,* 230 F.3d at 40.

All members of the MTA PD, regardless of rank, are subject to the same MTA PD policy with regard to discipline. The term "members" as used in the MTA PD Patrol Guide

---

[7] For example, the letter states that Plaintiff Mazyck received a one-day suspension for being off-post in 1988 whereas, upon information and belief, within the same year Kathleen Finneran failed to report to work for an entire month, escaped discipline, and was later promoted.

6

encompasses all ranks within the MTA PD.[8] The Patrol Guide states the following in its preamble:

> The aim of this Metropolitan Transportation Authority Police Department (MTAPD) Policies and Procedures Manual is to provide a uniform, systematic, and up-to-date reference to guide Members of the MTAPD in carrying out the duties, responsibilities and obligations imposed on them by law or necessarily assumed in carrying out the Department's objectives." (Nicotra Dec., Exhibit 3.)

Accordingly all members are similarly situated to the plaintiffs and are appropriate comparators, and the defendants' assertion that the supervisors need hold the same rank as the plaintiffs at the time of the charges, is without support. *See Graham*, 230 F. 3d at 41, citing *Cherry v. American Tel. and Tel Co.,* 47 F.3d 225, 229 (7th Cir. 1995) (postulating that company-wide policy uniformly applicable to all members of a group may be basis for comparing employees, regardless of particular job being performed). The fact that the MTA PD has a policy, universally applicable, in place with regard to discipline obviates the need that the penalty be imposed by the same supervisor.

Additionally, and contrary to the defendants' assertions, to establish a claim a disparate discipline, the penalties need not be imposed for the same conduct. Courts require only that the infractions be of comparable seriousness.[9] *McGuinness v. Lincoln Hall,* 263 F.3d 49, 54 (2d Cir. 2001) ("A plaintiff is not obligated to show disparate treatment of an *identically* situated employee.") It appears that defendants have provided plaintiffs solely with information about the identical violations that were committed by supervisors ignoring those of comparable seriousness.[10] "The determination of that two acts are of comparable seriousness requires—in

---

[8] See Patrol Guide Section on Military Conduct describing procedures for saluting members of different ranks. (Nicotra Dec. Exhibit 4)

[9] In *McDonnell* the Supreme Court held that "similarly situated" does not require identical conduct but "comparable seriousness" to establish an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973),.

[10] In the Declaration in Opposition to Production of Personnel Files of Supervisors, defendants set forth instances of discipline received by supervisors. Three related to motor vehicle accidents and one related to the disclosure of

addition to an examination of the acts—an examination of the context and surrounding circumstances in which those acts are evaluated." *Graham.*

As plaintiffs asserted in their May 27th letter, disparate treatment with regard to discipline can also be established by showing that an employee, not in the relevant protected class, committed a more egregious act and received a lesser penalty. To limit the inquiry to only those acts of comparable seriousness, as explained in *Graham*, would exclude strong evidence that could be used to establish disparate treatment: "[a] requirement that employees engage in the exact same offense in order to find them similarly situated is unwise because it would produce a scenario where evidence of favorable treatment of an employee who has committed a different but more serious, perhaps even criminal offense, could never be relevant to prove discrimination." *Graham,* 230 F.3d 34 at 40 (citing *Lynn v. Deaconess Medical Center-West Campus*, 160 F.3d 484, 488 (8th Cir. 1998)).

Thus plaintiffs are entitled to all documents regarding the disciplinary violations of supervisors that are of comparable, or greater, seriousness to those infractions committed by plaintiffs. Therefore any documents related to the serious infractions that plaintiffs have reason to believe occurred, as listed in their May 27th letter, should be produced.

### b. Documents pertaining to incidents which occurred prior to the statutory time period are discoverable.

The plaintiffs are entitled to documents related to disciplinary incidents that occurred prior to the statutory period. Plaintiffs allege that, beginning at the onset of their employment with the MTA PD and/or its predecessors, they have been subjected to a hostile work environment. One manifestation of the hostile work environment is increased scrutiny by their

---

confidential information to a civilian. Clearly the personnel files of the eleven supervisors are likely to contain allegations or instances of comparable or greater seriousness to the infractions attributed to the plaintiffs. Without the files we are unable to assess the existence or comparability of any other incidents.

8

supervisors which often culminates in discipline and/or threats of discipline. The harassment, with regard to discipline, has led to a "littering" of plaintiffs personnel folders with letters of intent to discipline and memos listing violations where no penalties were assessed.[11]

Courts have considered discipline to be a part of hostile work environment in instances where a reasonable fact-finder can conclude that employers utilized a dual system of discipline to discriminate against Plaintiffs. *Smith v. New Venture Gear, Inc.,* 2008 WL 200015, *21 (N.D.N.Y. January 22, 2008). Plaintiffs believe that the requested disciplinary files will help establish that Plaintiffs were subjected to a dual system of discipline, as a part of the hostile work environment, whereby African American and Hispanic employees are subject to more scrutiny, harassment, and discipline, than their Caucasian counterparts.

### 3. Plaintiffs are entitled to documents from the supervisors' personnel files related to career opportunities and advantages:

The plaintiffs have requested the personnel files of the named supervisors in order establish their claims of systemic discrimination (as explained above) and to establish plaintiffs' disparate treatment claims with regard to career opportunities and advantages. Defendants object to this request for reasons aforementioned and because they contend that the supervisors are not similarly situated to the plaintiffs with regard to career advancement.

### a. Supervisors are similarly situated to plaintiffs with regard to career opportunities and advancement.

It is disingenuous for the MTA PD to consider the supervisors not similarly situated with regard to career advancement. First, the plaintiffs and the supervisors are contemporaries,

---

[11] Defendants wrongly assert that disciplinary actions not resulting in the loss of days are not adverse employment actions. Def Mem, p6. However, the inclusion of disciplinary violations in their files disadvantages plaintiffs with regard to career opportunities.

9

beginning their careers at roughly the same time[12] and later diverging in rank due to the disparate allocation of career opportunities and advantages. Where the supervisors have progressed steadily into prestigious positions (despite—in some cases—disciplinary infractions, allegations of discrimination, and less than exemplary career performance) the plaintiffs, many of whom began prior to their supervisors, and had exemplary records with regard to police activity, were denied advancement.

In addition, as stated in plaintiffs' May 27th letter, certain supervisors and certain plaintiffs are similarly situated with regard to particular career opportunities and advantages. Plaintiffs have requested these documents in order to evaluate the qualifications of the supervisors and to establish disparate treatment with regard to plaintiffs' denials for particular opportunities and advantages.

Supervisors Terrett and Dunn are similarly situated to Plaintiff Bryan Henry. All three held the position of captain and voluntarily demoted themselves from the position of Captain to Lieutenant in 2003. Thereafter, Terrett and Dunn were hand-selected for the positions of Inspector and Deputy Inspector, while Plaintiff Henry was not. Further, John Fitzpatrick and Plaintiff Henry both applied for the position of Captain in 2007. Plaintiff Henry was denied and Fitzpatrick got the position.

Plaintiff Nzingha Kellman applied twice for the position of Detective Sergeant and was twice denied. Supervisors Karen Taylor and James Flannagan, applied during the same period, were evaluated by the same supervisors, and were promoted to the positions. As the Court

---

[12] Plaintiffs and supervisors in approximate order of seniority: **Plaintiff Marshall R. Mazyck, 1980, Plaintiff Lillian Alvarado, 1980, Plaintiff Gordon Urquhart, 1981**, Supervisor Kathleen Finneran, 1981, **Plaintiff Blake J. Willett, 1982**, Supervisor Kevin Mcconville 1983, Supervisor Kim Riley, 1983, Supervisor Karen Taylor 1983, Supervisor Terrance Culhane, 1984, **Plaintiff Bryan Henry, 1985**, **Plaintiff Kenneth Davis, 1985**, Supervisor Timothy Harmon, 1985, Supervisor James Flannagan, 1989, Supervisor Robert Terrett, 1989, Supervisor Peter Cummo, 1989**, Plaintiff Marilyn Y. Armstrong, 1990**, Supervisor John Fitzpatrick, 1990, Supervisor Thomas Dunn, 1992, **Plaintiff Eric Moore, 1994.**

10

recognized (in the context of a discussion about denial of career opportunities) documents relating to incidents that occurred "within two years of the decision…would be admissible." (Nicotra Dec. Exhibit 1, 12:1-3.)

Plaintiff Gordon Urquhart and Plaintiff Kenneth Davis, though senior detectives at the time, were denied high profile cases which led to decreased overtime earnings. Upon information and belief, Flannagan, acting in the capacity of an investigating detective (as opposed to supervisory capacity) assigned himself to cases which resulted in increased overtime earnings. Since Flannagan earned overtime by acting in the same capacity as Plaintiffs Urquhart and Davis, he is a direct comparator with regard to disparate allocation of overtime.

The plaintiffs are also similarly situated with the supervisors with regard to commendations. The Patrol Guide provides a general procedure to "recognize Members and civilians for distinguished acts or outstanding service" and makes no distinction based on rank. (Nicotra Dec., Exhibit 5.) Throughout their careers plaintiffs have been denied commendations for exemplary performance. For example Plaintiff Willett was denied commendations despite his participation in high profile arrests between 2000 and 2005. In addition, Plaintiff Davis was denied a commendation for his participation in a high profile investigation conducted with the FBI, who later awarded him for his achievements. Upon information and belief, Terrance Culhane received acknowledgment for throwing a party, and Kathleen Finneran received a commendation for her participation in the apprehension of an armed robber even though she did not participate in the arrest.

Plaintiffs are entitled to the requested documents. They are not asking that the entire personnel folders of supervisors be disclosed and have already conceded that certain portions of the files, such as medical history, may not be relevant. Nor are plaintiffs engaged in a fishing

11

expedition. Plaintiffs have only requested information pertaining to supervisors who, upon information and belief, have engaged in discriminatory conduct and/or made decisions giving rise to incidents listed in the lawsuit,[13] have advanced through the ranks without merit, and who have engaged in disciplinary violations without penalty. As such these files are relevant to plaintiffs' claims for disparate treatment claims and helpful in establishing systemic discrimination within the MTA PD.

## CONCLUSION:

Plaintiffs request that the Court deny the application of the defendants and compel the disclosure of the personnel files for the supervisors listed herein.

Dated: August 15, 2008

Respectfully submitted,

*[signature]*

Steve J. Hyman
Deanna R. Waldron
Rachel D. Nicotra
McLaughlin & Stern LLP
260 Madison Avenue
New York, NY 10016
(212) 448-1100

---

[13] "Generally an individual's personnel file is relevant and/or reasonably calculated to lead to the discovery of admissible evidence, and therefore discoverable, if the individual is alleged to have engaged in the retaliation of discrimination at issue or to have played an important role in the decision or incident that gives rise to the lawsuit." *Moss v. Blue Cross and Blue Shield of Kansas, Inc.*, 241 F.R.D. 683, 698 (D. Kan. 2007); see also *Murphy v. Board of Educ. of Rochester*