## McLAUGHLIN & STERN, LLP
FOUNDED 1898

DEANNA R. WALDRON
PHONE (212) 448-1100, EXT 349
FAX (212) 448-0066
email: DWALDRON@mclaughlinstern.com

260 MADISON AVENUE
NEW YORK, NEW YORK 10016
(212) 448-1100
FAX (212) 448-0066

MILLBROOK OFFICE
Franklin Avenue
P.O. Box 1369
Millbrook, New York 12545
(845) 677-5700
Fax (845) 677-0097

May 5, 2008

**VIA HAND DELIVERY**

Honorable Gerard E. Lynch
Judge, United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

        Re:    Armstrong et al. v. Metropolitan Transportation Authority et al.
                 Civil Action Number: 07 Civ 3561 (GEL)

Dear Judge Lynch:

       The parties are submitting this letter to address issues that have arisen with regard to the production of documents and to request an extension of time in order to complete discovery. On November 30, 3007, we appeared before Your Honor to discuss discovery issues. Since that conference, both parties produced additional document discovery, defendants deposed three plaintiffs, plaintiffs deposed one witness and several additional depositions are scheduled.

       We are currently scheduled to come before Your Honor on June 13, 2008; discovery is scheduled to be completed by May 13, 2008. We request that the Court grant an additional 90 days to complete discovery and reschedule the June 13, 2008 conference. This is the first extension of time to complete discovery requested.

**I.**     **Production of Personnel Files Identified by Plaintiffs:**

       **a. Plaintiffs' Position:**

       Plaintiffs ask that Your Honor intervene on our behalf and order the production of the personnel files, disciplinary histories, and civilian complaints for the two named defendants, ten of the plaintiffs' supervisors, and thirteen comparator officers.

1

During the November 30, 2007, status conference your Honor recognized that personnel files were the "bread and butter" of discrimination cases and that their contents were relevant, specifically mentioning that complaints of discrimination and complaints of excessive force should be included but did not foreclose the production of additional documents or personnel files in their entirety.

Courts have held that personnel records are relevant in cases of discrimination and have ordered their production. "In discrimination cases such as this, disclosure of personnel files may appropriately be limited to two categories of individuals: 1) similarly situated employees, and 2) individuals who played an important role in the employment decision or incident giving rise to the lawsuit." *Murphy v. Board of Educ. of Rochester City School Dist.*, 2000 WL 33945849 (W.D.N.Y. September 11, 2000); *See Moss v. Blue Cross and Blue Shield of Kansas, Inc.*, 241 F.R.D. 683 (D.Kan. 2007).[1]

The personnel files that plaintiffs have requested are either of comparator officers or supervisors who have played an important role in the incidents that gave rise to this lawsuit. These files are essential to plaintiffs' claims and will be used to establish the allegation that the MTA Police Department ("MTA PD") has subjected the plaintiffs to disparate treatment, that the named defendants have had knowledge of the acts and/or have taken part in discriminatory conduct, that the plaintiffs' supervisors have made decisions giving rise to the incidents of the lawsuits, and finally that the MTA PD has engaged in an ongoing practice or policy of discrimination that is evidenced through differential treatment between Caucasian officers and African American and Hispanic officers.

Plaintiffs are entitled to bring, and have alleged, a continuing violation based on an ongoing discriminatory policy or practice and/or specific and related instances of discrimination that were permitted by the employer to continue unremedied for so long as to amount to a policy or practice. *Cornwall v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994). Plaintiffs are also entitled to discovery of records that are relevant to these allegations, as they may provide proof of such specific ongoing discriminatory policy or practice. *Peterson v. City College of City University of New York*, 160 F.R.D. 22, 23-24 (S.D.N.Y. 1994).

The fact that the plaintiffs bring this action in their individual capacities as opposed to seeking class certification, does not preclude them from alleging a continuing violation nor does it prevent them from obtaining relevant discovery material. "[E]vidence of a pattern or practice is relevant to an individual's claim for discrimination." *Turner v. District of Columbia*, 383 F.Supp.2d 157, 169 (D.D.C. 2005). Plaintiffs may also use these records as relevant background evidence, *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 113, 122 S.Ct.

---

[1] Stating "generally an individual's personnel file is relevant and/or reasonably calculated to lead to the discovery of admissible evidence, and therefore discoverable, if the individual is alleged to have engaged in the retaliation or discrimination at issue or to have played an important role in the decision or incident that gives rise to the lawsuit." *Id* at 698.

2

2061, 2072 (2002), or "to establish motive and to put his timely filed claims in context", *Turner*, 383 F.Supp.2d at169.[2] Further, "in employment discrimination cases, plaintiffs may employ liberal civil discovery rules to obtain broad access to employer's records in order to generate a statistical analysis to show the disparate impact of an employer's personnel policies." Khan v. Sanofi-Synthelabo, Inc., Not Reported in F.Supp.2d, 2002 WL 31720528, 4 (S.D.N.Y. December 03, 2002).

The policy and practice has manifested itself in two ways: the promotion to supervisory commands of Caucasian officers who have engaged in discriminatory conduct and/or have excessive disciplinary violations and the disparate treatment of Caucasian officers as compared to African American and Hispanic officers with regard to training, promotions, transfers, commendations and disciplinary penalties. The Personnel Files of comparator officers and supervisors (including those named as individual defendants) are necessary to substantiate plaintiffs' claims.

Further, comparator personnel files are relevant in claims of discrimination based on disparate treatment specifically because they demonstrate the unequal treatment. Where documents requested are relevant to the claims raised by the plaintiff, courts have ordered the production of records. *Mercado v. Division of New York State Police*, 989 F.Supp. 521, 523 (S.D.N.Y. 1998). In the above-cited case, brought by an individual plaintiff, the court ordered production of the disciplinary files of ten comparator officers. The court also held that defendants' boilerplate objections that the comparator officers were not similarly situated were insufficient where no details were provided as to why the comparators' files were not relevant. *Id* at 523. See also *Peterson v. City College of City University of New York*, 160 F.R.D. at 24-25, where the court granted plaintiff's request for discovery of personnel files of comparative male or younger faculty members to who were allegedly given preferential treatment in tenure decisions.

Following our November 30th court conference, a Stipulation of Confidentiality was entered and your honor entered an order allowing defendants to produce personnel files pursuant to 50-a. Thereafter on January 22, 2008, defendants produced documents that were initially withheld on the basis of NY Civil Rights Law 50-a and prior to the execution of a Stipulation and Order of Confidentiality. After inspecting the production plaintiffs learned that the delivery, with regard to personnel files, was wholly deficient. Plaintiffs then attempted to resolve this issue without the Court's intervention by sending a letter, dated February 25, 2008, listing the deficiencies in defendants' production. A copy of plaintiffs' letter is annexed hereto as Exhibit A. Defendants replied to plaintiffs' letter in a letter dated March 10, 2008, and stated that they produced all of the portions of the personnel files which your Honor required based on the November 30th conference. A copy of defendants' letter is annexed hereto as Exhibit B. In an attempt at compromise, plaintiffs have offered to accept in lieu of the personnel files, an index listing the documents contained therein for the supervisory and comparator files. Defendants are unwilling to provide an index.

---

[2] Defendants' treatment of *Ledbetter v. Goodyear Tire and Rubber Co. Inc.*, 127 S.Ct. 2162 (2007) is not on point as it does not address the discovery issues present here.

3

Defendants claim that they are only obligated to release documents from the personnel files related to incidents of discipline involving race and gender discrimination. By employing this extremely narrow interpretation of your order to produce documents contained in the personnel files, defendants are wrongfully withholding relevant and necessary documents.

**b. Defendants' Position:**

Plaintiffs misrepresent Defendants' position. Defendants have produced and will continue to produce all relevant documents and information contained within the files of certain MTA PD members. However, the law does not require Defendants to produce all documents in those files, or to list all documents in those files, simply because Plaintiffs identify such individuals as defendants, supervisors or comparators.

Defendants oppose the wholesale production of confidential personnel files demanded by Plaintiffs. It would be unnecessarily intrusive and violate the privacy interests and expectations of the affected employees. It would also violate the Court's December 17, 2007 Stipulated Order,[3] which, consistent with the Federal Rules, contemplated production of only those documents "relevant and material" to the claims in the Complaint.

Merely naming someone as an individual defendant or asserting that an individual is a supervisor or a "comparator" does not entitle Plaintiffs to that individual's entire personnel file. Such files contain many types of confidential personnel records that are irrelevant to plaintiffs' claims, e.g., medical, benefits, background investigation and disciplinary information irrelevant to the claims asserted here. At the November 30, 2007 conference, the Court suggested that the relevant documents in personnel files included complaints or discipline involving allegations of discrimination or excessive force relating to potential racial issues. Defendants have produced and will continue to produce any such documents.

The Defendants' production is consistent with Federal Courts that have balanced the policy concerns embodied by New York Civil Rights Law § 50-a and the disclosure requirements of Fed. R. Civ. P. 26(b)(1) and have required a demonstration of relevancy prior to the disclosure of such records, *see, e.g., Martin v. Lamb*, 122 F.R.D. 143, 147-48 (W.D.N.Y. 1988) (requiring *in camera* review of materials in dispute to determine relevancy); *Mercado v. Division of New York State Police*, 989 F.Supp. 521, 523 (S.D.N.Y. 1998) (performance evaluations not relevant to Plaintiff's discrimination claims). Here, the Court specifically recognized that the wholesale production of the personnel files of MTA PD members was not warranted and discussed the types of documents within such files that would be relevant. Defendants have produced and will continue to produce all such records "relevant and material" to Plaintiffs' claims of employment discrimination.

Plaintiffs claim they should have broad discovery of the personnel files of supervisors and alleged comparators because they seek to demonstrate a continuing violation based on an "ongoing

---

3 A copy of the December 17, 2007 Stipulated Order is attached hereto as Exhibit C.

4

discriminatory policy or practice." However, Plaintiffs' rationale reveals that they do not seek the requested files to support their individual allegations but rather to support vague claims of a "pattern or practice" of systemic discrimination. Plaintiffs are not entitled to conduct broad discovery supporting a "pattern or practice" case. This is not a class action. Nor have plaintiffs claimed that the MTA's policies have a disparate impact on the basis of race or gender. This is an action brought by ten individual plaintiffs alleging ten individualized disparate treatment claims. "Pattern or practice" claims may only be brought by a private party as a class action. *See Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 876 n. 9 ("[I]t is plain that the elements of a *prima facie* pattern or practice case are the same in a private class action [as when the government brings the claim]."); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 711 (2d Cir. 1998) (plaintiff could not rely upon pattern or practice of discrimination pleading requirements, as he did not bring a class action); *Davis v. Coca-Cola Bottling Consolidated,* 516 F.3d 955, 964-970 (11th Cir. 2008) (holding that pattern or practice claims may only be brought as a class action); *Bacon v. Honda,* 370 F.3d 565, 575 (6th Cir. 2004) (pattern or practice method of proof is not available to individual plaintiffs); *Walter v. Hamburg Central School District,* Case No. 04-CV-996S, 2007 WL 1480965, *5 (W.D.N.Y. 2007) (listing decisions in this circuit holding against the applicability of pattern or practice cases outside of a class action context).[4] Plaintiffs are therefore not entitled to the wholesale disclosure of confidential personnel files to support "pattern or practice" or "class" allegations.

Plaintiffs' claim that the mere allegation of a continuing violation warrants broad discovery of personnel files is undercut by the United States Supreme Court's holdings in *Ledbetter v. Goodyear Tire and Rubber Co. Inc.,* ___ U.S. ___, 127 S.Ct. 2162 (2007) and *National Railroad Passenger Corporation v. Morgan,* 536 U.S. 2061 (2002). In *Ledbetter* and *Morgan,* the Court held that the statute of limitations for commencing a discrimination case begins to run when each discrete act of alleged discrimination occurs, such as "termination, *failure to promote, denial of transfer,* and refusal to hire."[5] A continuing violation is not shown by alleging that the effects of past discrimination continue to have an impact upon the Plaintiffs.[6] These decisions preclude Plaintiffs from demonstrating a continuing violation based upon alleged distinct acts, such as failures to promote, denials of transfers, and imposition of discipline.

---

4 *Turner v. District of Columbia,* 383 F.Supp.2d 157, 168-69 (D.D.C. 2005), a case relied upon by Plaintiffs for the proposition that a "pattern or practice" claim may brought by an individual, is contrary to the majority view set forth above and to the law in this Circuit.
5 *Ledbetter,* 127 S.Ct. 2162, 2169 (quoting *Morgan,* 536 U.S. at 110-111) (emphasis added). Additional cases cited by Plaintiffs in support of their demand for personnel files predate the restrictions upon continuing violation claims set forth in *Ledbetter and Morgan. Cornwell v. Robinson,* 23 F.3d 694, 703-704 (2d Cir. 1994) is distinguishable in that it affirmed the finding of a continuing violation largely based upon allegations of a continuing hostile work environment, not their individual disparate treatment claims. *Peterson v. City College of the City University of New York,* 160 F.R.D. 22, 25 (S.D.N.Y. 1994), involving a distinct denial of tenure to the plaintiff, is no longer good law in light of the Supreme Court's holdings. *Khan v. Sanofi-Synthelabo Inc.,* No. 01-cv- 11423JSMDF, 2002 WL 31720528, *4 (S.D.N.Y. 2002), involved a claim where the employer had an admitted policy of rescinding employment offers to applicants with poor credit. The Court allowed evidence of such rescissions outside of the limitations period to allow the plaintiff to demonstrate the disparate impact of the employer's policy. Plaintiffs in this case do not articulate a disparate impact claim.
6 *Ledbetter,* 127 S.Ct. 2167-2169.

5

Plaintiffs seek disclosure of the personnel files of MTA PD members in connection with their pattern or practice claims of disparate treatment in promotions, transfers, training opportunities and imposition of discipline – exactly the type of discrete acts that cannot support a continuing violation theory. Moreover, while *Morgan* allows a court to consider "prior acts" as background evidence in support of a timely claim, the documents sought here are relevant only to the "class" allegations which Plaintiffs have no standing to pursue.

II.   **Personnel Files of Named Defendants:**

   a. **Plaintiffs' Position:**

Plaintiffs have requested the Personnel files for Defendants McConville and Culhane, including but not limited to, files from the MTA Internal Affairs Bureau (P files) personnel files held at district offices, electronic data including but not limited to databases associated with "PeopleSoft", and any personnel files maintained by the LIRR and/or Metro North. Additionally, plaintiffs requested the disciplinary histories and civilian complaints of these individuals.

On January 22, 2008, defendants produced the following seven pages from Chief Culhane's files:

1. A six page anonymous complaint filed against Culhane with the Office of Civil Rights and a one-page complaint filed with the OCR by Officer Hinton.

No documents were provided from McConville's file. This production is entirely insufficient for individually named defendants who have played a key role in, and/or have knowledge of, the discriminatory acts alleged in the complaint. Plaintiffs ask that your Honor order the full production of defendants McConville's and Culhane's personnel files.

   b. **Defendants' Position:**

Plaintiffs demand the entire personnel files, disciplinary histories, civilian complaints and all personnel information concerning Defendants McConville (formerly Chief of the MTA PD) and Culhane (Assistant Deputy Chief of the MTA PD). However, Plaintiffs do not articulate specific allegations relating to these individual Defendants warranting disclosure of their complete personnel files. They are not "comparators" or otherwise "similarly situated" to Plaintiffs. Defendants have already produced any documents from these two files concerning alleged discrimination. Nothing else is material or relevant.

III.   **Personnel Files of Supervisors**

   a. **Plaintiffs' Position:**

Plaintiffs have requested the personnel files, disciplinary histories, and civilian

6

complaints of the following supervisors: Lt. Harmon, Ins. Dunn, Ins. Terrett, Sgt. Riley, Sgt. Cummo, Sgt. Giel, and Sgt. Karen Taylor, John Fitzpatrick, James Flannagon, and Kathleen Finneran. All of these individuals made decisions that led to the incidents of discrimination.

On January 22, 2008, defendants produced the following documents from three of the ten supervisors' files:

1. From Det./Sgt. Taylor's personnel file: A civilian complaint against Karen Taylor filed in 1988 (11 pages).
2. From Sgt. Giel's personnel file: A civilian complaint filed against Giel in 1998 (22 pages), a civilian complaint filed against Giel in 2000 (17 pages), and a complaint filed by Giel with the OCR (34 pages).
3. From Inspector Terrett's personnel file: A complaint filed against Terrett alleging use of excessive force in 1989 (6 pages).

Plaintiffs contend that the documents contained within the personnel files of the supervisors are important for two reasons. First, plaintiffs have alleged that supervisors are promoted through the ranks despite MTA's knowledge of discriminatory conduct. Second, plaintiffs have claimed that African American and Hispanic officers are subjected to disparate disciplinary penalties. Upon information and belief many of the named supervisors have violated department procedures, or have been involved in serious infractions and have not received substantial disciplinary penalties. As such, we specifically requested documents contained in the personnel files related to the disciplinary histories of the listed individuals. The disciplinary histories that we have requested are not limited to discipline related to alleged discrimination.

Again, defendants' narrow interpretation of the Court's order has denied plaintiffs with necessary and relevant documents. We request that your Honor order the defendants to either turn over the files in their entirety or supply plaintiffs with an index of the contents of the personnel files and an index of disciplinary records and civilian complaints. Once supplied with the index plaintiffs will request the necessary documents.

b. **Defendants' Position:**

Plaintiffs also demand the entire personnel files, disciplinary histories and civilian complaints of ten individual supervisors who, they claim, "made decisions that led to the incidents of [alleged] discrimination," and because the MTA allegedly has a "policy and practice of promotion to supervisory commands of Caucasian officers who have engaged in discriminatory conduct and/or have excessive disciplinary violations." With respect to the allegation that these individuals may have "excessive disciplinary violations," they are not "comparators" or individuals "similarly situated" to Plaintiffs with respect to their disparate treatment claims.[7] With respect to allegations

---

7 Because the relevant disciplinary records from these supervisor's files relating to allegations of discrimination have already been produced, and because these individuals were the Plaintiffs' supervisors, this case is distinguished from *Mercado*, 989 F.Supp. at 523, where the Defendant articulated only "boilerplate" objections to the production of

7

that the supervisors engaged in discriminatory conduct, Defendants have already produced responsive documents concerning any alleged racial or gender based discriminatory conduct by those supervisors, as well as complaints that they used excessive force. If no such documents were produced as to a particular supervisor, it means that no such documents were located.

Defendants understand that they are required to produce all relevant documents, and have taken seriously their responsibility in this regard. However, Plaintiffs' request that Defendants prepare an index of all documents contained in the personnel files of the individual Defendants and named supervisors seeks to impose upon Defendants an unduly burdensome task beyond the requirements of the Federal Rules of Civil Procedure. Defendants should not have to incur the time and expense involved in preparing an index of such records solely for the ease and convenience of Plaintiffs.

## IV.  Personnel Files of Comparator Officers

### a. Plaintiffs' Position:

On February 25, 2008, plaintiffs sent defendants a Second Request for Documents in which plaintiffs requested the comparator files of fourteen comparator officers. Defendants have objected to the production of the comparator personnel files. Due to the fact that these documents are necessary to plaintiffs' claims, plaintiffs request that the Court order their production in order not to further delay the discovery of the case.

Plaintiffs have identified MTA PD comparator officers to substantiate individual claims of disparate treatment and to establish that the MTA PD had a policy that allowed Caucasian officers greater career opportunities and lesser disciplinary penalties. Plaintiffs' request for personnel files is not overly burdensome nor can it be said to be a fishing expedition. Plaintiffs have identified only fourteen officers from a department of over seven hundred.

The personnel files of nine of these officers are being requested in order to establish the plaintiffs' allegations that they were denied career opportunities where Caucasian officers were groomed for and subsequently granted advantageous positions.. All of the comparators officers were promoted to Detective and/or transferred into a special unit with less than four years on the force as opposed to the plaintiffs who on average are denied appointment to detective until the tenth year with the department. Without their personnel files we will be unable to establish whether these individuals requested the training, promotions, and transfers that they received. In order to fully evaluate their eligibility for these positions we also need to view their disciplinary histories and other factors which would tend to increase or diminish their qualifications for the positions. For this reason we have requested their entire personnel files.

The remaining five comparators are being requested with regard to plaintiffs' allegation

---

disciplinary records of comparator officers.

8

of disparate disciplinary penalties. Several of the plaintiffs in this case have been brought up on disciplinary charges and have received excessive penalties. Upon information and belief, the comparator officers selected were involved in certain violations and received lenient penalties. Plaintiffs have also requested the file of a supervisor, Sgt. Quinn, who was engaged in an altercation with an African American officer and made a derogatory comment to the officer. To the best of plaintiffs' knowledge the supervisor was not disciplined for this altercation. Similarly another plaintiff in this case was disciplined for an incident involving a supervisor, where the plaintiff was subjected to a derogatory comment by a supervisor who escaped discipline. Without knowledge of the above mentioned supervisors' disciplinary files, we cannot fairly evaluate the MTA PD's decision not to subject them to discipline for the above incidents.

Further, we believe that the contents of plaintiffs' files will vary from their Caucasian counterparts with regard to commendations, notes/memos from supervisors, application materials, and disciplinary references. Without the personnel files of other officers we will be unable to analyze the contents of our plaintiffs' files.

Plaintiffs ask that your Honor order the defendants to either turn over the files in their entirety or supply plaintiffs with an index of the contents of the personnel files and an index of disciplinary records and civilian complaints. Plaintiffs do not forego the right to request the personnel files of other comparator officers at a later date.

b. **Defendants' Position:**

Plaintiffs demand production of the entire personnel files of "fourteen comparator officers." Nine of those are requested concerning a claim of "disparate allocation of career opportunities," in that Plaintiffs allege that these members received Detective appointments or other assignments in a shorter time period than the Plaintiffs. The other five "comparators" are requested concerning a claim of "disparate disciplinary penalties."

Defendants recognize the right of Plaintiffs to obtain relevant portions of files from legitimate comparators. However, the Plaintiffs do not make a sufficient showing as to why any of the alleged "comparators" is a comparator with respect to any Plaintiff's claims of disparate allocation of career opportunities or discipline. Plaintiffs' claim that these members received promotions and assignments in a shorter time period than the Plaintiffs, without more, does not render them legitimate comparators. Plaintiffs are not entitled to a fishing expedition through the confidential personnel files of their fellow MTA PD members. Plaintiffs do not articulate what promotions or assignments they each applied for but were denied, and which, if any, of the nine career opportunity "comparators" filled those vacancies or obtained the "career opportunities" Plaintiffs sought during the limitations period at issue in this case.[8] Nor do Plaintiffs allege that any of the five disciplinary

---

[8] Plaintiffs commenced this action on May 4, 2007, asserting claims under, among other statutes, 42 U.S.C. § 1981. That statute provides a four year statute of limitations, the longest limitations period of any cause of action asserted in the Amended Complaint. *Jones v. R.R. Donnelley & Sons Company*, 541 U.S. 369, 382-384 (2004) (applying four year statute of limitations to claims asserted under §1981).

9

"comparators" were similarly situated but treated better than Plaintiffs for disciplinary purposes during that same period.

One individual whose file is requested, Sergeant James Quinn, is, as Plaintiffs concede, a supervisor involved in an unrelated claim by Marc Thomas, an MTA PD police officer who is not a party to this case. Thomas' claim is the subject of a current proceeding before the New York State Division of Human Rights, *Thomas v. Metropolitan Transportation Authority*, SDHR Case No. 10112628. Plaintiffs in this case do not claim that Quinn engaged in discriminatory conduct toward any of them. Quinn is neither similarly situated to any of the Plaintiffs nor was he involved in any of the employment decisions or incidents giving rise to the Complaint. The contents of his personnel file are therefore irrelevant to this proceeding. MTA has already produced relevant records from the personnel file of Sergeant Giel, the supervisor who was involved in a distinct incident with Michael Benjamin, one of the Plaintiffs in this case.

Plaintiffs seek the personnel files of four other current and former MTA PD members who were involved in the investigation of an alleged criminal assault of a civilian at Penn Station in 2004. No Plaintiffs were involved in this incident. Moreover, they do not and cannot claim that they were disciplined more harshly than these MTA PD members in connection with any remotely comparable incident. Upon information and belief, Plaintiffs have not identified these individuals as comparators for any other reason. The entire personnel files of these MTA PD members are not material or relevant to Plaintiffs' claims. Accordingly, the production of these individuals' entire personnel files is overly broad and not within the spirit of the Stipulated Order. Defendants should be required to produce only personnel records reflecting discipline imposed upon these members comparable to charges and discipline allegedly assessed against the Plaintiffs.

With respect to the nine members named as "comparators" in connection with "disparate allocation of career opportunities," Defendants will produce documents contained within their personnel files relating to the qualifications of those individuals who received positions or assignments for which the Plaintiffs applied and were denied. Here, Plaintiffs simply make a blanket assertion that these individuals are comparators because they were appointed to Detective assignments or assigned to a "special unit" in less time than the Plaintiffs — but not at a time when any of the Plaintiffs sought such assignments. They do not claim that these individuals were selected instead of the Plaintiffs for positions for which the Plaintiffs applied and were denied. Seven of these individuals applied for and were appointed to Detective assignments and/or selected for assignment to a single unit, the Interagency Counterterrorism Task Force ("ICTF"), in 2004. None of the Plaintiffs responded to the MTA's solicitation for such assignments. These individuals were not chosen over the Plaintiffs for Detective assignments to the ICTF.[9] They submitted applications and were considered for the assignment at a different time and by different individuals than Plaintiffs. Five of the Plaintiffs were, in fact, appointed to Detective assignments several years

---

9 The two other individuals named as comparators with respect to job opportunities are Detective-Sergeant Thomas Farney and Sergeant Adam Gross. As one Plaintiff alleges that she was not selected for the Detective Sergeant position at a time when Detective Sergeant Farney was appointed to that position, Defendants will produce as confidential any documents within his personnel file reflecting his qualifications for that position. Defendants are unaware of the reason Sergeant Gross has been named as a comparator.

10

earlier than these alleged "comparators," and two Plaintiffs were also assigned to the ICTF prior to any individual whose files are requested.

Plaintiffs claim that these files will enable them to substantiate their individual disparate treatment claims by demonstrating that MTA allegedly had a policy of discrimination with respect to career opportunities and discipline. Plaintiffs' own argument illustrates that they seek these individuals' personnel files not to support their individual disparate treatment claims but, again to support their untenable "class" allegation that it usually takes African-Americans longer to receive Detective or other assignments. Based upon Plaintiffs' stated rationale, the individuals whose files are requested are not legitimate comparators.

For the same reasons we objected above to the creation of an index of the personnel files of supervisors, Defendants object to the request that they create an index of the personnel files of these alleged comparators.

### V. Command Rosters from 1998-2003:

#### a. Plaintiffs' Position:

Plaintiffs have requested the Command Rosters and charts for the MTA PD from the date of inception in 1998 to present in Plaintiffs' First Request For Production of Documents, No. 18. Defendants have delivered charts beginning in August of 2003. In our February 25th letter plaintiffs reiterated their request for the remaining command charts. Defendants have refused to deliver these documents as outside of the scope of the litigation. Plaintiffs are alleging hostile work environments beginning with the commencement of their employment. Many of the plaintiffs were hired in the early 1980s. Further, these charts will allow us to track the positions of named defendants and supervisors who have played roles in the incidents giving rise to the allegations of discrimination and will serve as a valuable, time-saving, resource for both parties throughout the litigation.

Plaintiffs request your Honor order the production of the requested documents. Defendants will not be burdened by the production and the information is relevant to plaintiffs' claims. Since plaintiffs are alleging a hostile work environment beginning with the commencement of their employment, Command Rosters beginning upon those dates are relevant. However, plaintiffs are only requesting Command Rosters for the period after the merger in 1998 of the LIRR and Metro North Rail Roads. Plaintiffs simply request five documents: one Command Roster for every year for the years between 1998 to 2003. This is not a burdensome request.

#### b. Defendants' Position:

Plaintiffs claim that Defendants have wrongfully refused to produce organizational charts dating back to the inception of the MTA PD in 1998. Plaintiffs are incorrect.

11

Plaintiffs rely upon a document request that sought disclosure of organizational charts for the MTA PD and/or documents concerning the organization and structure of the MTA PD. Defendants objected to this Request on the grounds that it was overly broad and unduly burdensome and as drafted called for the production of literally every document reflecting the organization and structure of the MTA PD. Notwithstanding these objections, Defendants gathered and produced organizational charts reflecting the organizational structure of the MTA PD for the entire four-year limitations period.

Plaintiffs now seek such charts dating back nearly ten years to the inception of the MTA PD. They have not articulated the relevancy of such time-barred material that would warrant their production. Such documents are irrelevant insofar as they reflect an organizational structure predating the period covered by this lawsuit and having no bearing upon any claim that might be timely. Plaintiffs' desire to "track the positions of the named defendants and supervisors" during this time period is irrelevant to the individual disparate treatment claims they assert here. These charts cannot be evidence of an alleged hostile work environment. They do not constitute "background" relevant to Plaintiffs' continuing violation theory. Defendants should not be required to go through the burdensome task of locating and producing documents reflecting the structure of the MTA PD long before the commencement of the limitations period where such documents cannot support Plaintiffs' disparate treatment claims.

Accordingly, Plaintiffs' requests for discovery of personnel files and organizational charts should be denied.

The parties thank the Court for its courtesy and consideration with respect to these issues.

Respectfully submitted,

MCLAUGHLIN & STERN LLP
Attorneys for Plaintiffs
260 Madison Avenue
New York, NY 10016
Tel: 212-448-1100

By: *[signature: Deana R. Waldron]*

STEVE HYMAN
DEANNA R. WALDRON
RACHEL NICOTRA

LITTLER MENDELSON, P.C.
Attorney for Defendants
885 Third Avenue, 16th Floor
New York, New York 10022
(212) 583-9600

By: *[signature]*

CRAIG R. BENSON
STEPHEN A. FUCHS

NORMAN SIEGEL
Attorney for Plaintiffs
260 Madison Avenue
New York, NY 10016
(212) 532-7586

By: *[signature: Norman Siegel]*

NORMAN SIEGEL