UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Marilyn Y. Armstrong,  Marshall R. Mazyck, Lillian Alvarado, Gordon Urquhart, Blake J. Willett, Bryan Henry, Kenneth Davis, Eric Moore, Nzingha M. Kellman, and Michael Benjamin,

                    Plaintiffs,

          -against-

Metropolitan Transportation Authority, Elliot Sander, Executive Director and Chief Executive Officer of the MTA, William Morange, Deputy Executive Director/Director of Security of the MTA, Kevin McConville, Chief of the MTA Police Department, and Terrance Culhane, Assistant Deputy Chief of the MTA Police Department,

                    Defendants.

---

Civil Action No. 07-3561(DAB)(HBP)

ECF Case

---

# DEFENDANTS' MEMORANDUM OF LAW
# IN SUPPORT OF SUMMARY JUDGMENT
# AGAINST PLAINTIFF KENNETH DAVIS

LITTLER MENDELSON
A Professional Corporation
Craig R. Benson
Stephen A. Fuchs
Elias J. Kahn
900 Third Avenue, 8th Floor
New York, NY  10022
212.583.9600

Attorneys for Defendants
Metropolitan Transportation Authority,
Elliot Sander, William Morange, Kevin
McConville, and Terrence Culhane

TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ..............................................................................................................2

I.     THE DISPARATE TREATMENT CLAIMS SHOULD BE DISMISSED ........................2

     A.    Plaintiff's Time-Barred Allegations Should Not be Considered .................................2

     B.    The Court Should Dismiss The Remaining Disparate Treatment Claims .................3

          1.    The Failure To Transfer Claim Should be Dismissed.......................................4

          2.    Davis' Claim of Unfavorable Assignments Fails..............................................5

          3.    The Training Claim Should be Dismissed .........................................................6

               a. Davis Cannot Show Any Inference of Discrimination..............................6

               b. Davis Cannot Show He Suffered Any Adverse Action. ...........................7

          4.    Davis' Denial of Overtime Claim Should be Dismissed...................................7

               a.   Davis Suffered No Adverse Action.......................................................7

          5.    Davis' Claim that He Was Denied a Commendation Fails..............................9

          6.    Davis' Claims Concerning His Shield And Exit Interview Should be
               Dismissed. ................................................................................................11

II.    THE HOSTILE WORK ENVIRONMENT CLAIMS SHOULD BE DISMISSED ...........11

     A.    The Standard Under Title VII, § 1981 and the NYSHRL.................................11

     B. NYCHRL Standard.........................................................................................12

     C.    The Allegations are Insufficient to Establish a Claim Under Any Applicable
          Standard.........................................................................................................12

          1.    Davis' Hostile Work Environment Claims Are Time-Barred......................12

          2.    Davis' Arguably Timely Hostile Work Environment Claims Fail ..............13

               a.   The Alleged Inappropriate Comment Fails to Establish a Claim............13

               b.   The Alleged Report Writing Claim Also Fails......................................14

               c.   The Alleged Excessive Scrutiny Fails to State a Claim ..........................14

III.   THE COURT SHOULD DISMISS THE RETALIATION CLAIMS ...................................15

A.    The Applicable Standards ........................................................................................15

B.    Davis' Claim Concerning His Exit Interview and Shield Should Be Dismissed.................16

C.    Davis' Retaliation Claims Relating to His Workers' Compensation Claims Should
    Be Dismissed ........................................................................................................17

IV. THE PATTERN AND PRACTICE CLAIM SHOULD BE DISMISSED................................19

## TABLE OF CONTENTS
### (CONTINUED)

PAGE

IV.   DAVIS' § 1981 CLAIMS SHOULD BE DISMISSED .................................................20

V.   DAVIS' § 1983 CLAIMS SHOULD BE DISMISSED .................................................21

VI.   THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED ...............................................................................................................21

     A.   § 1983 ...............................................................................................................22

          1.   Defendants Named in Their Official Capacities ...............................22

          2.   McConville ............................................................................................22

          3.   Culhane .................................................................................................22

     B.   § 1981 ...............................................................................................................23

          1.   McConville ............................................................................................24

          2.   Culhane .................................................................................................24

     C.   NYCHRL and NYSHRL .................................................................................24

          1.   McConville ............................................................................................24

          2.   Culhane .................................................................................................25

CONCLUSION ....................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page**

*Alfano v. Costello,*
    294 F.3d 365 (2d Cir. 2002) ............................................................. 12

*Arroyo v. WestLB Admin., Inc.,*
    54 F.Supp. 2d 224 (S.D.N.Y. 1999), *aff'd* 213 F.3d 625 (2d Cir. 2000) .......................... 14

*Augustin v. Yale Club,*
    274 Fed. Appx. 76 (2d Cir. 2008) ..................................................... 11, 15

*Aulicino v. New York City Department of Homeless Services,*
    580 F.3d 73 (2d Cir. 2009) ................................................................ 4

*Bishop v. Best Buy Co., Inc.,*
    No. 08 Civ. 8427 (LBS), 2010 U.S. Dist. LEXIS 110631 (S.D.N.Y. Oct. 13, 2010) ....... 20

*Brown v. Coach Stores,*
    163 F.3d 706 (2d Cir. 1998) ............................................................. 19

*Burlington Northern & Santa Fe Railway Co. v. White,*
    548 U.S. 53 (2006) ................................................................. 15, 17

*Chin v. ABN AMRO N. Am Inc.,*
    463 F. Supp. 2d 294 (E.D.N.Y. 2006) ..................................................... 7

*Clark County Sch. Dist. v. Breeden,*
    532 U.S. 268 (2001) .................................................................... 17

*Cunningham v. Consol. Edison, Inc.,*
    No. 03 Civ. 3522 (CPS), 2006 U.S. Dist. LEXIS 22482
    (E.D.N.Y. March 28, 2006) .............................................................. 16

*Davis v. County of Nassau,*
    355 F. Supp. 2d 668 (E.D.N.Y 2005) ..................................................... 22

*Evans v. Port Auth. of New York and New Jersey,*
    No. 00 Civ. 5753 (LAK), 2002 U.S. Dist. Lexis 811 (S.D.N.Y. Jan. 22, 2002) ............... 11

*Fincher v. Depository Trust and Clearing Corp.,*
    604 F.3d  712 (2d Cir. 2010) ......................................................... 15, 17

*Forrest v. Jewish Guild for the Blind,*
    3 N.Y.3d 295 (2004) ................................................................... 3, 11

## TABLE OF AUTHORITIES
### (continued)

Page

*Galdieri-Ambrosini v. National Realty & Dev. Corp.,*
    136 F.3d 276 (2d Cir. 1998) ........................................................................ 18

*Garrett v. Garden City Hotel, Inc.,*
    No. 05-CV-0962 (JFB), 2007 U.S. Dist. LEXIS 31106 (E.D.N.Y. Apr. 19, 2007) .......... 16

*Gutierrez v. City of New York,*
    Case No. 08-cv-6537 (LBS) (JCF), 2010 U.S. Dist. Lexis 125484 (S.D.N.Y. Nov.
    29, 2010) ........................................................................................................ 20

*Hafer v. Melo,*
    502 U.S. 21 (1991) ........................................................................................ 22

*Igielnik v. NYC Human Resources Admin.,*
    94 Civ. 0810 (HB), 1996 U.S. Dist. LEXIS 3635 (S.D.N.Y. March 26, 1996) ............... 21

*Int'l Bhd of Teamsters,*
    431 U.S. at 336 .............................................................................................. 20

*Jones v. R.R. Donnelley & Sons,*
    541 U.S. 369 (2004) .................................................................................. 2, 13

*Kravitz v. N.Y. City Transit Auth.,*
    No. 94 Civ. 5910, 2001 U.S. Dist. LEXIS 21618 (E.D.N.Y. Dec. 18, 2001) .................... 7

*Leung v. New York Univ.,*
    08-cv-5150 (GBD), 2010 U.S. Dist. LEXIS 33265 (S.D.N.Y. March 29, 2010) ............ 14

*Lopez v. S.B. Thomas, Inc.,*
    831 F.2d 1184 (2d Cir. 1987) ........................................................................ 11

*Martin v. Citibank, N.A.,*
    762 F.2d 212 (2d Cir. 1985) ............................................................................ 3

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) ................................................................................... 3, 4

*McGullam v. Cedar Graphics, Inc.*
    609 F.3d 70 (2d Cir. 2010) ........................................................................ 13, 15

*Moche v. City Univ. of New York,*
    781 F. Supp. 160 (E.D.N.Y. 1992), *aff'd*, 999 F.2d 538 (2d Cir. 1993) ....................... 24

**TABLE OF AUTHORITIES**
(continued)

Page

*Monell v. Dep't of Social Servs.*,
436 U.S. 658 (1978) ..................................................................................20

*Murphy v. American Home Products Corp.*,
58 N.Y.2d 293 (1983) (NYSHRL); N.Y.A.C. § 8-502(d) (NYCHRL) ...........................2

*National Railroad Passenger Corp. v. Morgan*,
536 U.S. 101 (2002) ............................................................................2, 13, 15

*Nieves v. Angelo, Gordon & Co.*,
07-2330-cv, 2009 U.S. App. LEXIS 14584 (2d Cir. July 6, 2009)................................18

*Patrowich v. Chemical Bank*,
483 N.Y.S.2d 659 (N.Y. 1984) .......................................................................24

*Priore v. N.Y. Yankees*,
307 A.D.2d 67 (1st Dept. 2003) .....................................................................24

*Raskin v. Wyatt Co.*,
125 F.3d 55 (2d Cir. 1997) ......................................................................12, 13

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000) ...................................................................................4

*Robinson v. Metro-North Commuter R.R.*,
267 F.3d 147 (2d Cir. 2001) .........................................................................19

*Rumala v. New York City Transit Auth.*,
  Case No. cv-05-5428 (CBA)(JMA),
2005 U.S. Dist. LEXIS 19766 (E.D.N.Y. Aug. 26, 2005) ................................2, 20, 21, 23

*Santiago v. City of New York*,
05-CV-3668 (RRM) (VVP), 2009 U.S. Dist. LEXIS 30371 (E.D.N.Y. Mar. 31,
2009)...................................................................................................5

*Saulpaugh v. Monroe Community Hosp.*,
4 F.3d 134 (2d Cir. 1993) ...........................................................................21

*Schwapp v. Town of Avon*,
18 F.3d 106 (2d Cir. 1997) ..........................................................................12

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Shumway v. United Parcel Service,*
    118 F.3d 60 (2d Cir. 1997) .................................................................................. 9

*Taylor v. Potter,*
    99 Civ. 4941 (AJP), 2004 U.S. Dist. LEXIS 15992 (S.D.N.Y. Aug. 16, 2004) ................ 9

*United States v. City of New York,*
    631 F. Supp. 2d 419 (S.D.N.Y. 2009) ................................................................ 19

*Velasquez v. Goldwater Mem. Hosp.,*
    88 F. Supp. 2d 257 (S.D.N.Y. 2000) .................................................................. 18

*Weinstock v. Columbia University,*
    224 F.3d 33 (2d Cir. 2000) ................................................................................. 3

*Whidbee v. Garzarelli Food Specialties, Inc.,*
    223 F.3d 62 (2d Cir. 2000) ............................................................................... 23

*Will v. Michigan Dep't. of State Police,*
    491 U.S. 58 (1989) ......................................................................................... 22

*Williams v. NYC Housing Auth.,*
    61 A.D.3d 62 (1st Dep't 2009) ............................................................. 12, 15, 16, 17

*Williams v. R.H. Donnelley, Corp.,*
    368 F.3d 123 (2d Cir. 2004) ....................................................................... 4, 5, 11

*Wilson v. N.Y. City DOT,*
    01 Civ. 7398 (RJH), 2005 U.S. Dist. LEXIS 21620 (S.D.N.Y Sept. 27, 2005) ........... 9, 23

*Winston v. Verizon Servs. Corp.,*
    633 F. Supp. 2d 42 (S.D.N.Y. 2009) .................................................................... 3

**Statutes**

42 U.S.C. 2000e-5(e)(1) ........................................................................................ 2

N.Y.C. Admin. Code § 8-502(d) ............................................................................... 2

42 U.S.C. § 1981 ......................................................................................... *Passim*

.42 U.S.C. § 1983 .............................................................................. 1, 2, 13, 21, 22

**TABLE OF AUTHORITIES**
(continued)

Page

N.Y.C. Admin. Code. § 8-107(7) ........................................................................... 1, 16, 17

New York City Human Rights Law,
    N.Y.C.Admin. Code §§ 8-107 *et seq.* ("NYCHRL")................................ *Passim*

New York State Human Rights Law, N.Y. Exec. L. §§ 296 *et seq.* ("NYSHRL") .............. *Passim*

Title VII of the Civil Rights Act of 1964,
    42 U.S.C. §§ 2000e *et seq* ........................................................................... *Passim*

**Internet Reference Sources**

*Office of National Drug Control Policy*, http://www.whitehousedrugpolicy.gov/html,
    last visited on December 8, 2010 ........................................................................... 5

## PRELIMINARY STATEMENT

Defendants move for summary judgment dismissing the stale and insufficient race discrimination and retaliation claims of Kenneth Davis ("Plaintiff" or "Davis"),[1] a retired member of the Police Department of Defendant Metropolitan Transportation Authority ("MTA PD"). Davis was not discriminated against. He was treated more favorably than similarly situated MTA PD members and suffered no harm from Defendants' actions.

Most of Davis' claims of race based disparate treatment and hostile work environment should be dismissed as time-barred. His few timely allegations are insufficient as a matter of law to establish liability. His retaliation claims arising from his applications for Workers' Compensation and disability benefits are baseless, as they were handled by MTA's Medical Department, which had no connection to his discrimination claims.

Davis' claim under § 1983 should be dismissed, as it duplicates his Title VII claims, and asserts no rights separate and distinct from those asserted under Title VII.

Plaintiffs cannot assert pattern or practice claims because they are private individuals who have not brought a class action.

Davis' claim under § 1981 should be dismissed, as he cannot establish that he was discriminated against pursuant to a policy or custom of discrimination.

Davis proffered no facts to suggest that any individual defendant is personally liable. His claims against them should similarly be dismissed.

Summary judgment should thus be granted dismissing Davis' claims in their entirety.

---

[1] Davis and nine other Plaintiffs herein allege disparate treatment based on their race and (with respect to the three female plaintiffs) gender, a racially hostile work environment, and unlawful retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), 42 U.S.C. § 1981 ("§1981"), 42 U.S.C. § 1983 ("§ 1983"), the New York State Human Rights Law, N.Y. Exec. L. §§ 296 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107 et seq. ("NYCHRL"). Each Plaintiff's individual claims are based upon different facts and thus are, with the Court's permission, being addressed in separate motions.

ARGUMENT[2]

I.      **THE DISPARATE TREATMENT CLAIMS SHOULD BE DISMISSED.**

A.      **Plaintiff's Time-Barred Allegations Should Not be Considered.**

Most of Davis' disparate treatment claims are time-barred.  The longest limitations period available under the statutes pleaded in the Amended Complaint is four years for § 1981 claims. *Jones v. R.R. Donnelley & Sons*, 541 U.S. 369, 382 (2004).  Davis first filed his Complaint with this Court on May 4, 2007; all of his claims under § 1981 prior to May 4, 2003 are based upon discrete events and are therefore time-barred.  Moreover, since Davis cannot state a claim against MTA under § 1981,[3] the longest remaining available limitations period is the three year limitations period available under the NYSHRL and NYCHRL,[4] and his claims arising prior to May 4, 2004 are time-barred.  *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002).[5]

---

[2] Defendants here summarize Davis' allegations and respectfully refer the Court to the accompanying Statement of Undisputed Material Facts pursuant to Local Rule 56.1 for a detailed recitation of the relevant facts.

[3] As set forth in Points V, VI and VII, *infra*, Davis' § 1981 and § 1983 claims should be dismissed for failure to demonstrate that he suffered discrimination pursuant to a municipal policy or custom. *Rumala v. New York City Transit Auth.*, Case No. cv-05-5428 (CBA)(JMA), 2005 U.S. Dist. LEXIS 19766, *30 (E.D.N.Y. Aug. 26, 2005).

[4] Title VII's statute of limitations bars claims based on events occurring more than 300 days prior to filing a charge of discrimination with a state or local equal employment agency. 42 U.S.C. § 2000e-5(e)(1). Davis filed an administrative complaint with the New York State Division of Human Rights on July 21, 2006, which was cross filed with the EEOC (Amended Complaint ["Amd. Cmplt."] ¶59.)  Accordingly, the Court should dismiss Davis's Title VII claims pre-dating September 24, 2005. Davis's claims arising prior to May 4, 2004 are time barred under § 1983, NYSHRL and the NYCHRL, which have statutes of limitations of three years. *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 307 (1983) (NYSHRL); N.Y. Admin. Code § 8-502(d) (NYCHRL).

[5] Davis' disparate treatment allegations predating May 2004 are based upon the following discrete events: (1) in the 1980's (prior to the creation of MTA PD in January 1998; *see* Defendants' Local Rule 56.1 Statement at ¶ 9), then Chief Joseph Flynn of LIRR PD allegedly transferred Davis out of the "Freight Crime Unit" to an assignment in Penn Station and transferred a white officer into the Freight Crime Unit (*Id.* at 136:9 – 138:3); (2) in about 1986 or 1987, at LIRR PD, Chief Flynn allegedly removed Davis from the Anti-Crime Unit (Davis Dep. 107:22 – 110:24); (3) in or about 1988, while at LIRR PD, a one day suspension for being off post (Davis Dep. 111:18 – 112:16); (4) denial of appointment to Detective in the Long Island Rail Road Police Department ("LIRR PD") for nine years from 1985 until 1994) (Amd. Cmplt. ¶¶ 156-157); (5) Davis was allegedly denied an award for an undercover investigation in Suffolk County in 1996 (Davis Dep. 174:4 – 174:17); (6) between 1998 and 2000, Davis asked for New York State homicide training from Detective Sergeant Kim Riley, but he was denied such training while a supervisor, Detective Sergeant Peter Cummo, was allowed to attend (Davis dep. 212:4 -212:20); (7) while working under Riley from 1998-2000, a white Detective, James Flanagan, attended a Criminal Investigations Course ("CIC") and sex crimes training, but Davis did not (Davis Dep. 212:23 -213:3); (8) in 2001 or 2002, Davis was initially denied a transfer from Penn Station to Oakdale (Davis Dep. 223:18 – 224:4; 226:5 – 228:11); (9) when Davis requested homicide training in 2001 or 2002 from Lieutenant Tim Harmon, Cummo was allowed to go, but Davis was not; (10) Lieutenant Robert Murphy discriminated against him and Detective Blake Willett, another African-American Plaintiff in this case, by allegedly not letting them have overtime and by changing their hours while they worked in Penn Station in 2001-2002 (Davis Dep. 96:18 – 97:22); (11) in or about 2001-2002, while working at Penn Station, Harmon denied Davis overtime (Davis Dep.

## B.    The Court Should Dismiss The Remaining Disparate Treatment Claims.

Davis' arguably timely disparate treatment allegations are: (1) his transfer to MTA PD's Interagency Counterterrorism Task Force ("ICTF") in 2003 was delayed (Davis Dep. 234:20 – 237:12); (2) he was denied an assignment to work with the High Intensity Drug Trafficking Area ("HIDTA") unit at an unspecified time (Davis Dep. 246:15 – 249:24; 253:14 – 257:17); (3) Charles Wendell, a more senior white ICTF Detective, allegedly received more training than Davis (Davis Dep. 268:2 – 270:20); (4) Davis was assigned to work on cases involving gangs (Davis Dep. 295:7 – 296:13) and received less overtime as a result; (5) two junior white Detectives received more overtime than Davis, and two other white Detectives were allegedly allowed to receive unlimited overtime (Davis Dep. 288:5 – 295:1); (6) Davis did not receive a commendation he requested (Davis Dep. 309:21 – 311:1); and (7) when he retired, Davis did not receive an exit interview, and MTA delayed providing him his shield (Davis Dep. 296:18 – 300:4; Amd. Cmplt. ¶ 166).  As will be demonstrated below, summary judgment should be granted dismissing each of the claims.

Disparate treatment claims under Title VII, § 1981, NYSHRL and NYCHRL[6] are analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  A plaintiff must initially prove by a preponderance of the evidence a *prima facie* case of discrimination by showing:  (1) he belongs to a protected class; (2) he applied for and was qualified to perform the required duties; (3) he suffered an adverse employment action; (4) which occurred

---

274:8 – 279:8); and (12) in 2002, Davis was involved in a high profile investigation with the Federal Bureau of Investigation ("FBI"), which awarded him for his work on the case, while MTA did not (Amd. Cmplt. ¶ 160; Davis Dep. 173:2 – 173:17).

[6] Disparate treatment claims under Title VII, § 1981, NYSHRL and NYCHRL are evaluated in the same manner.  *See Martin v. Citibank, N.A.*, 762 F.2d 212, 216-17 (2d Cir. 1985) (evaluating Title VII and § 1981 claims the same way); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 305, fn. 3 (2004) (standards for recovery under NYSHRL and NYCHRL are the same); *Weinstock v. Columbia University*, 224 F.3d 33, 42 n.1 (2d Cir. 2000) ("identical standards apply to employment discrimination claims brought under Title VII, Title IX, New York Executive Law § 296, and the Administrative Code of the City of New York.").  *See also Winston v. Verizon Servs. Corp.*, 633 F. Supp. 2d 42, 46-47 (S.D.N.Y. 2009) (nature and quality of evidence considered on motions for summary judgment under Title VII and NYCHRL has not changed).

under circumstances giving rise to an inference of discrimination. *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004).

If a *prima facie* case has been established, the employer must articulate a legitimate, non-discriminatory reason for having taken the action of which the plaintiff complains. *McDonnell Douglas Corp.*, 411 U.S. at 802-03. If the employer articulates a legitimate, non-discriminatory reason for its actions, plaintiff must prove that the allegedly legitimate reason is merely a pretext for discrimination. 411 U.S. at 804. The Court must determine whether Plaintiff can satisfy his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citation omitted). These standards require dismissal of Davis' disparate treatment claims.

### 1.    The Failure To Transfer Claim Should be Dismissed.

Davis claims disparate treatment based on an alleged initial failure to transfer him to ICTF (which oversees and protects MTA property and assets from potential terrorist attacks) (Davis Dep. 221:4 – 222:19).[7]

First, as set forth above, this claim is time-barred, because Davis was transferred to ICTF in December 2003, and therefore, the claim arose before May 2004 (Pucillo Decl. ¶ 6, Ex. B). Even if the claim was timely, Davis cannot establish a *prima facie* case on this claim. First, Davis cannot demonstrate that any failure to transfer him in the fall of 2003 to ICTF occurred under circumstances giving rise to an inference of race discrimination. Davis did not apply for assignment to ICTF in the fall of 2003. For this reason alone, his claim relating to this assignment fails.[8] Moreover, Davis requested, and was granted, the transfer in December 2003, despite that he had not

---

[7] Davis does not know when he first requested a transfer to ICTF, (Davis Dep. 221:21 – 222:8), but ICTF was created in June 2003 (Pucillo Decl. ¶ 2), and he was transferred to ICTF pursuant to his request in December 2003 (Pucillo Decl. Ex. B).

[8] *Aulicino v. New York City Department of Homeless Services*, 580 F.3d 73, 80 (2d Cir. 2009) (to establish a *prima facie* case of discriminatory failure to promote, plaintiff must establish that he applied for and was qualified for a job for which the employer was seeking applicants).

participated in the application and interview selection process for ICTF.  Davis' supervisor, Riley, contacted an ICTF supervisor and Davis' union representative and sought the transfer on Davis' behalf (Davis Dep. 235:16-22; Riley Dep. 253:13 – 254:15; Pucillo Dep. 125:6 – 126:18).  Davis transferred into ICTF, effective December 10, 2003 (Pucillo Decl. Ex. B).  Because he was transferred to ICTF without even having to apply, Davis was treated more favorably than other MTA PD members, black and white alike, and cannot establish a disparate treatment claim.

### 2.    Davis' Claim of Unfavorable Assignments Fails.

Davis next claims he was subject to disparate treatment, because he allegedly: (1) was denied an assignment to work in the HIDTA Unit;[9] and (2) was discriminated against in ICTF, because he was assigned to work on cases involving gangs.

Davis cannot demonstrate a *prima facie* case on these claims.  First, these assignments did not constitute a materially adverse employment action,[10] as they did not create a "materially significant disadvantage with respect to terms of his employment."  *R.H. Donnelly Corp.*, 368 F.3d at 128.  Davis did not lose any compensation or benefits as a result of these assignments.  Nor did he demonstrate that he suffered any disadvantage or adverse consequence.  *See Santiago v. City of New York*, 05-CV-3668 (RRM) (VVP), 2009 U.S. Dist. LEXIS 30371, at *29-*30 (E.D.N.Y. Mar. 31, 2009) (denial of preferred assignment did not constitute adverse action because none of the assignments "would have resulted in an increase in wage, salary, or benefits, a change in title, or significantly increased material responsibilities").  These events were not adverse employment actions.

---

[9] "HIDTA" is a national program designed to enhance and coordinate drug control efforts among local state and federal law enforcement agencies to reduce drug trafficking. *See, e.g., Office of National Drug Policy Control,* http://www.whitehousedrugpolicy.gov/hidta/, last visited on December 8, 2010.

[10] See Section II.B.4, *infra*, for a detailed showing that being assigned to gangs cases did not adversely affect Davis' compensation.

Second, Davis cannot demonstrate that these assignments occurred under circumstances giving rise to an inference of discrimination.  With respect to HIDTA, ICTF assigned only three MTA PD members to work with three HIDTA units – two with NYPD and one with the Intelligence ("Intel") Units of Nassau and Suffolk Counties, which do similar work to HIDTA (Pucillo Dep. 36:5 – 37:15; Pucillo Decl. ¶ 7).  One of the three ICTF members assigned to HIDTA was Plaintiff Gordon Urquhart (*Id.*).  From 2003 to December 2006, Urquhart, an African-American Detective, worked in the ICTF under Chief Ernest Pucillo. [11]

With respect to his gangs assignment, Davis concedes that a white Detective assigned to ICTF, Adam Jutze, was assigned with him to gangs cases as his partner during Davis' entire time in ICTF (Davis Dep. 245:1 – 245:9; 290:21-291:4).  Given these racially neutral assignments, Davis cannot show an inference of race discrimination.

As the result of the foregoing, Davis cannot demonstrate a *prima facie* case of discrimination based on his work assignments, and the Court should dismiss these claims.

### 3.     The Training Claim Should be Dismissed

Davis also cannot state a *prima facie* case that he was discriminated against in ICTF because Charles Wendell, a white ICTF Detective, allegedly received more training than he did.

#### a.     Davis Cannot Show Any Inference of Discrimination.

While in ICTF, Davis received extensive training – at least thirteen different courses from his December 2003 ICTF assignment to his September 2006 injury (Fuchs Decl. Ex. 20).  During the same period, Wendell received nine training classes (Fuchs Decl. ¶22, Ex. 21).  Moreover, Davis could not name any specific training opportunity that he requested and was denied while in the ICTF (Davis Dep. 273:10 – 273:13).  He proffers no evidence to support a claim that his race played any role in his training opportunities.

---

[11] The other two ICTF members assigned to work with HIDTA or Intel units at the same time as Urquhart were Raymond Godas, white, and Michael Pizzo, white (*id.*).  Later, Daniel Ojeda, Hispanic, was also assigned to work with Nassau County's Intel unit  (Urquhart Dep. 192:19-22; Pucillo Decl. ¶ 7).

### b.    Davis Cannot Show He Suffered Any Adverse Action.

Davis also cannot establish a *prima facie* case as to his training claim, because he did not suffer any adverse employment action. No adverse employment action can be found when an employee has not shown material harm from a denial of training. *Kravitz v. N.Y. City Transit Auth.*, No. 94 Civ. 5910, 2001 U.S. Dist. LEXIS 21618, *22-23 (E.D.N.Y. Dec. 18, 2001). Davis never sought any position for which any training was relevant, and he was never denied any opportunity at MTA because he lacked certain training. Davis suffered no adverse employment action and cannot state a *prima facie* case of disparate treatment with respect to training.

### 4.    Davis' Denial of Overtime Claim Should be Dismissed.

Davis next claims that he was discriminatorily denied overtime while in ICTF. First, his conclusory assertion that his ICTF supervisors denied him overtime based on his race is not supported by any evidence and thus is insufficient to overcome summary judgment. *See Chin v. ABN AMRO N. Am Inc.*, 463 F. Supp. 2d 294, 301 (E.D.N.Y. 2006) ("[T]he Court is required to disregard allegations which are purely conclusory and devoid of concrete particulars.").

### a.    Davis Suffered No Adverse Action.

The evidence establishes that Davis suffered no adverse action, because he was treated favorably compared to other Detectives, black and white alike. In 2004, Davis' first year in ICTF, he received the second highest overtime pay of 13 ICTF Detectives, and the seventh highest overtime pay of all 46 MTA PD Detectives (Fuchs Decl. ¶ 23, Ex. 22). That same year, he received more overtime pay than eight of nine white Detectives in ICTF (*id.*). In 2005, Davis earned the fourth highest overtime pay amongst 15 Detectives in ICTF and the seventh highest amount of overtime pay of 44 MTA PD Detectives. That year, he received more overtime pay than seven of 10 white Detectives in ICTF (Fuchs Decl. ¶24, Ex. 23).

In 2006, Davis went on disability leave following a September 18, 2006 injury, and he remained out of work until his January 2007 retirement (Davis Dep. 296:18 – 297:12; Fuchs Decl. ¶

25, Ex. 24). Although he did not work from September 2006 to the end of the year, Davis still received over $25,000 in overtime pay that year, the seventh most overtime pay out of 15 ICTF Detectives, and the thirteenth highest out of 50 Detectives in MTA PD. He earned more in overtime pay in 2006 than six of 10 white ICTF Detectives and than 22 of 30 white MTA PD Detectives overall (Fuchs Decl., ¶26, Ex. 25). Accordingly, Davis cannot establish a *prima facie* case that he was denied overtime on the basis of his race.

Davis alternatively claims that two white detectives, Jutze and Henry Micyck, received more overtime than he did. But Davis has proffered no evidence that race was a reason. Micyck and Jutze received less overtime than Davis in 2004, but Micyck received more and Jutze only slightly more than Davis in 2005.[12] Both received more overtime pay than Davis in 2006, when Davis missed the last quarter of the year due to injury. (Fuchs Decl. ¶¶24, 26, Exs. 23, 25). These facts, standing alone, simply do not support a claim that Davis – consistently one of the highest overtime earners – was somehow the victim of discrimination. Moreover, there were legitimate reasons for Jutze and Micyk's greater overtime pay in those two years. They were the two most highly motivated ICTF members, who consistently went out of their way to volunteer for additional assignments, over and above the other members of ICTF, including Davis (Pucillo Decl. ¶ 11).

Next, Davis alleges he received less overtime than white Detectives in ICTF as a result of being assigned to work on gangs cases. This claim is specious. Jutze, Davis' white partner, was assigned to gangs cases with Davis during Davis' entire time in ICTF (Davis Dep. 245:1 – 245:9; 290:21 - 291:4). Jutze and Davis were both among the highest overtime earners within ICTF. Gangs cases were assignments that generated substantial overtime (Pucillo Decl. ¶10).[13]

---

[12] In 2005, Micyk received approximately $53,000 in overtime earnings, Jutze received just under $40,000 in overtime pay, and Davis received just under $37,000 in overtime pay (Fuchs Decl. Ex. 23).

[13] *See* Davis and Jutze 2004 – 06 overtime pay (Fuchs Decl. Exs. 22, 23 and 25).

Lastly, Davis claims disparate treatment based on the fact that two white officers, Lieutenant John Barile and Detective Charles Wendell, were allowed to receive unlimited overtime (Davis Dep. 293:13-16). Once again, he proffers no support for this claim.

As an initial matter, Barile was not a MTA employee. He worked for the MTA Triborough Bridge and Tunnel Authority, not MTA, ICTF or MTA PD. (Pucillo Decl. ¶ 8). Thus, whether or not Barile, who was never a member of MTA PD, received unlimited overtime is irrelevant and immaterial. Barile is therefore not an appropriate comparator to Davis.[14]

Wendell, an ICTF Detective eleven years senior to Davis (Davis Dep. 292:23 - 293:1, Fuchs Decl. Ex. 26), had a unique expertise in computer technology (Urquhart Dep. 206:3-9, 231:2 – 16; Pucillo Dep. 172:18 – 173:7; Pucillo Decl. ¶ 9). This expertise, which Davis did not have, contributed to Wendell's enhanced overtime assignments in comparison to any other Detective in ICTF or MTA PD from 2003-06 (*id*). Davis proffers no evidence to suggest that this legitimate nondiscriminatory reason is pretextual, or that race played any role in Wendell receiving more overtime than anyone else.

Davis' claims with respect to denial of overtime should be dismissed.[15]

### 5.    Davis' Claim that He Was Denied a Commendation Fails.

Davis claims he requested, but did not receive, a commendation in 2003 for his work on a case involving stolen money from an automatic ticket machine.

---

[14] *Shumway v. United Parcel Service,* 118 F.3d 60, 64 (2d Cir 1997).

[15] *See Wilson v. N.Y. City DOT*, 01 Civ. 7398 (RJH), 2005 U.S. Dist. LEXIS 21620, at *53 (S.D.N.Y Sept. 27, 2005) (no *prima facie* case when plaintiffs generally alleged their superiors distributed choice overtime to non-minority co-workers, where plaintiffs did not provide "affirmative and specific" supporting evidence that they were actually denied overtime in favor of co-workers or denied overtime at all); *Taylor v. Potter*, 99 Civ. 4941 (AJP), 2004 U.S. Dist. LEXIS 15992, at *81 (S.D.N.Y. Aug. 16, 2004) (rejecting denial of overtime claim where there was "no evidence that [plaintiff] was offered fewer opportunities to work overtime . . . or was offered fewer opportunities than other similarly situated employees.").

Even if § 1981 applied, and this claim was timely under that statute,[16] Davis still cannot establish a *prima facie* case of race discrimination, because he cannot show any inference that race played a role in the decision to deny this commendation.  Davis worked on the automatic ticket machine case with Fred Doscher, a white Detective, who also did not receive an award (Davis Dep. 310:23 – 311:1).  Davis thus cannot show that race had any impact here.  Moreover, Davis' failure to get the commendation was not an adverse employment action, as he never sought advancement beyond Detective, and never attempted to change assignments to one where the commendation would have been a factor in any decision affecting his job.

Even if Davis could articulate a *prima facie* case of race discrimination as the denial of this commendation, it was denied for legitimate reasons.  Specifically, the commendation request in question was an application for an "Excellent Police Duty" award which requires "a conspicuous act or achievement that distinguished [the members] from other officers." (Finneran Decl. Ex. A at Section 5).  This application was reviewed by the Awards Committee in May 2003 and was found not to meet this criteria, because Davis and Doscher did not themselves make the arrest. (Finneran Decl. ¶6-8, Ex. B).  Davis can proffer no evidence to show that this decision was a pretext for race discrimination.

Because Davis can offer no evidence that race played any role in the denial of the commendation or that such denial constituted an adverse employment action, this claim should be dismissed.

---

[16] As Davis' claim under § 1981 fails, the four year limitations period under that statute is unavailable, and this claim is time-barred under the three year limitations periods available under NYSHRL and NYCHRL, as it arises prior to May 2004. See Point V, *infra*.

6.     **Davis' Claims Concerning His Shield And Exit Interview Should be Dismissed.**

Finally, Davis alleges he was subjected to disparate treatment on the basis of his race, because when he retired in January 2007, he did not receive an exit interview or immediately receive his police shield (Davis Dep. 296:18 – 300:2; Amd. Cmplt. ¶ 166).

Davis, who retired while he was out of work on a disability leave, never requested an exit interview (Davis Dep. 296:18 – 297:17).   Davis received his police shield three months after requesting it, a standard delay (Davis Dep. 296:18 – 300:2; Amd. Cmplt. ¶ 166, Rehbein Decl. ¶3). These post-retirement actions had no impact on his employment with MTA, because his employment had already ended by virtue of his voluntary retirement.   *R.H. Donnelley Corp.*, 368 F.3d at 128.   Moreover, receipt of a shield confers no benefit or rights upon a retired MTA PD member. (Rehbein Decl. ¶2). Davis proffers no evidence that white Detectives on disability leaves received exit interviews or received their shields immediately and without request.   The allegations relating to the exit interview and the shield, even if true, do not constitute adverse employment actions against Davis.

Based on the foregoing, the Court should dismiss all of Davis' disparate treatment claims.

## II.     THE HOSTILE WORK ENVIRONMENT CLAIMS SHOULD BE DISMISSED.

### A.     The Standard Under Title VII, § 1981 and the NYSHRL

Under Title VII, § 1981 and the NYSHRL, to establish a hostile work environment claim based on race, an individual must demonstrate that his workplace was so permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of his employment were thereby altered.[17]   *Augustin v. Yale Club*, 274 Fed. Appx. 76, 77 (2d Cir. 2008) (citations and

---

[17] As with disparate treatment claims, hostile work environment claims under § 1981 are evaluated under the same standards as Title VII. *See Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir. 1987) (§ 1981 and Title VII hostile work environment claims are governed by the same standards); *Evans v. Port Auth. of New York and New Jersey*, No. 00 Civ. 5753 (LAK), 2002 U.S. Dist. Lexis 811, *5 (S.D.N.Y. Jan. 22, 2002) (same). Similarly, the standards for Title VII and NYSHRL hostile work environment claims are the same. *See Forrest*, 3 N.Y.3d at 305, n.3 (NYSHRL claims are analyzed in the same manner as Title VII claims).

quotations omitted).  "This test has objective and subjective elements: the misconduct shown must

be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and

the victim must also subjectively perceive that environment to be abusive." *Alfano v. Costello*, 294

F.3d 365, 374 (2d Cir. 2002) (citations and quotations omitted). "[I]nstead of sporadic racial slurs,

there must be a steady barrage of opprobrious racial comments." *Schwapp v. Town of Avon*, 118

F.3d 106, 110 (2d Cir. 1997) (citation omitted).

### B.   NYCHRL Standard

Under the NYCHRL, a plaintiff alleging a hostile work environment still must demonstrate

that he was treated "less well" because of his race.[18]  However, even under the NYCHRL, a plaintiff

alleging a hostile work environment cannot defeat summary judgment when the acts complained of

are nothing more than "petty slights and trivial inconveniences."[19]

Davis fails to establish a hostile work environment claim under either standard.

### C.   The Allegations are Insufficient to Establish a Claim Under Any Applicable Standard.

#### 1.   Davis' Hostile Work Environment Claims Are Time-Barred.

Most of Davis' claims are based upon allegations predating May 4, 2004[20] and involve

conduct that is sporadic, remote in time, about different individuals, and is not related to any

---

[18] *Williams v. NYC Housing Auth.*, 61 A.D.3d 62, 78 (1st Dep't 2009).

[19] *Id.* at 80.

[20] For example, Davis states that at some point between 1998 and 2000, then Detective Mark Landro told him that Riley allegedly told him that Davis dressed like Puff Daddy (Davis Dep. 150:20 – 154:2). This claim is time-barred. In addition, a hearsay statement, such as this one, may not be used to stave off summary judgment. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on [a] motion for summary judgment") (citations omitted). Davis' additional allegations predating May 2004 are: (1) in the 1980's he heard a fellow police officer named 'Testirari' (first name unknown) call an African-American person a "nigger" (Davis Dep. 316:23 – 318:13); (2) Robert Murphy, a white Police Officer, told Davis in or around 1993 that Murphy thought then Sergeant Terrence Culhane was "racist" (Davis Dep. 98:22 – 98:24); (3) prior to 1998, Culhane allegedly told Davis to take off his dark sunglasses so he could "see his face" (Davis Dep. 86:16 – 86:23); (4) while riding in a car on an Indian reservation in Shirley, NY some time between 1998 and 2000, Riley allegedly said to Davis: "These people don't want to work.  All they do is drink."; (5) between 1998 and 2000, Landro, who is white, mentioned to Riley that he would like to be assigned to a special program in Far Rockaway, and Riley allegedly responded: "Why would you want to deal with those people?" (Davis Dep. 149:7-13); (6) between 1998 and 2000, Riley allegedly reprimanded Davis about a report he wrote in front of a new Detective, Richard Medwig, and possibly Detective Andrew Roderick (Davis Dep. 145:5 – 148:7); (7) before 2000, Medwig told Davis that he stopped being friends with

incidents arising during the limitations period.  Because these allegations are unrelated to any

supposed conduct arising within the limitations period, they are not part of any continuing violation

that would merit their consideration.  *Morgan*, 536 U.S. at 113, 120; *McGullam v. Cedar Graphics,*

*Inc.* 609 F.3d 70, 75-78 (2d Cir. 2010).

### 2. Davis' Arguably Timely Hostile Work Environment Claims Fail.

Davis also alleges the following arguably timely events to support his hostile work

environment claim:  (1) At an unspecified time, another Detective told him that Cummo said that

Davis and Willett were "moolies" (Davis Dep. 158:9 – 159:11); (2) his supervisor, Riley, wrote

reports for white Detectives (Davis Dep. 215:1 – 217:19); and (3) his supervisors, Riley and

Cummo, overly scrutinized his work by making corrections to his reports and they did not do so

with regard to white Detectives (Davis Dep. 11:21 – 11:23, 160:21 – 161:3, 219:13 – 219:23).[21]

### a. The Alleged Inappropriate Comment Fails to Establish a Claim.

Davis did not know when the "moolie" comment was made by Cummo (Davis Dep. 158:24

– 159:2), and therefore, he cannot establish that it occurred within the limitations period.  Moreover,

since Davis did not work with Cummo after transferring to ICTF in December 2003 (Davis Dep.

221:4–9; Pucillo Decl. Ex. B), it is unlikely that it occurred thereafter.  In addition, Davis did not

hear Cummo make this alleged comment (Davis Dep. 158:9 – 158:19).  This claim is therefore

based on hearsay and may not preclude summary judgment.[22]  Further, such a comment, made

---

Culhane, because Culhane treated Detective Stancil Williams (black) negatively and "went after" Williams (Davis Dep. 366:7 – 366:10); (8) in 2001, Chief Eugene Corcoran allowed National Guard officers to muster in Davis' and Willett's office in Penn Station (Davis Dep. 282:1 – 283:14; 370:15 – 371:17); (9) at some unspecified point in time, Medwig allegedly told Davis that Culhane called LIRR PD Chief James Simmons a "nigger" (Davis Dep. 319:17 – 320:18); and (10) at an unspecified time, Detective Agostino Paratore said to another officer that there would be "chicken bones all over the place" at Penn Station when Davis and Willett came to work there (Davis Dep. 320:19 – 321:20).

[21] As noted on page 2, *supra*, the limitations period for a § 1981 claim is four years. *Jones v. R.R. Donnelley & Sons*, 541 U.S. 369, 382 (2004).  However, as noted in Point V, *infra*, Davis' claim under § 1981 fails.  As noted at fn 4, *supra*, the limitations period for claims under Title VII is 300 days, and for claims under the NYSHRL, the NYCHRL and § 1983, the limitations period is three years.

[22] *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on [a] motion for summary judgment") (citations omitted).

outside of Davis' presence on a single occasion several years prior to the Complaint, is insufficient as a matter of law to create a hostile work environment.[23]

### b.  The Alleged Report Writing Claim Also Fails.

Davis' claim that Riley wrote reports for white Detectives does not allege conduct hostile to Davis.  Davis does not know when this conduct allegedly occurred, and he did not work for Riley after December 2003, and therefore, he cannot show that it occurred within the limitations period. Moreover, it is undisputed that Riley assisted several Detectives she supervised in preparing reports, including African-American Detectives, such as Detective John Brewington (Riley Dep. 156:10 – 157:14).  Davis testified that he does not know whether or not Riley wrote any reports for African-American officers (Davis Dep. 219:24 – 220:5).  This allegation does not state a viable cause of action based upon a hostile work environment.

### c.  The Alleged Excessive Scrutiny Fails to State a Claim.

Davis alleges he was subject to excessive scrutiny by Cummo and Riley, because they corrected his reports.[24]  Davis admits that it was their job to scrutinize his work (*Id.* 12:5 – 12:9). Davis was unaware of a single white Detective who made the same mistakes in their reports and was not criticized by these supervisors (Davis Dep. 161:13 – 162:13).

At most, Davis' claim here is that Cummo and Riley corrected his reports and asked him to revise his errors.  Such alleged scrutiny is not actionable under Title VII, NYSHRL or NYCHRL. *See Leung v. New York Univ.*, 08-cv-5150 (GBD), 2010 U.S. Dist. LEXIS 33265, at *21-23 (S.D.N.Y. March 29, 2010) (alleged "unfair scrutiny" by an employer does not constitute a hostile work environment under Title VII, the NYSHRL and the NYCHRL).

---

[23] *See, e.g., Arroyo v. WestLB Admin., Inc.*, 54 F.Supp. 2d 224, 231 (S.D.N.Y. 1999), *aff'd* 213 F.3d 625 (2d Cir. 2000) (affirming summary judgment for employer on a hostile work environment claim where plaintiff alleged that co-worker called the employee a "f—g spic," a "wetback," and an "asshole" on three separate occasions).

[24] As with his other allegations relating to Cummo and Riley, Davis does not allege that this conduct arose within the limitations period, and he did not work for those supervisors after December 2003 (Davis Dep. 221:4-9).

As the foregoing demonstrates, Davis failed to identify any alleged conduct arising after May 2003 to support his hostile work environment claims.  As Davis cannot demonstrate even one act that took place within the limitations period, his hostile work environment claims are time-barred as a matter of law.[25]  Even if the allegations were timely, Davis still fails to demonstrate that his workplace was severely or pervasively permeated with discriminatory intimidation, ridicule, and insult severe enough to alter the terms and conditions of his employment. *Augustin*, 274 Fed. Appx. at 77.  Even applying the NYCHRL standard, Davis has failed to demonstrate that he was treated less well on the basis of his race.  Rather, the conduct he alleges, if anything, amounts to nothing more than petty slights or trivial inconveniences, and is not actionable under any applicable standard. *Williams*, 61 A.D.3d at 80.

Accordingly, the Court should dismiss Davis' hostile work environment claims.

## III.   THE COURT SHOULD DISMISS THE RETALIATION CLAIMS.

### A.   The Applicable Standards

To establish a *prima facie* retaliation claim under Title VII, §1981, and the NYSHRL, a plaintiff must show by a preponderance of the evidence that: (1) he engaged in a protected activity; (2) defendant knew of the protected activity; (3) defendant took adverse employment action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse employment action. *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (citations omitted). A defendant must then articulate a legitimate, non-retaliatory reason for having taken the adverse action. *Id.* If defendant does so, the "presumption of retaliation dissipates and the plaintiff must show that retaliation was a substantial reason for the complained-of action." *Id.* (citations omitted).  Davis cannot satisfy this standard.

---

[25] *Morgan*, 536 U.S. at 128; *McGullam*, 609 F.3d at 75-78.

Under the NYCHRL, a plaintiff need not show that he suffered a materially adverse action. Rather, he must show that the employer's conduct was "reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin Code. § 8-107(7); *Williams*, 61 A.D.3d at 71.

**B.    Davis' Claim Concerning His Exit Interview and Shield Should Be Dismissed.**

Davis alleges that he was somehow retaliated against when MTA did not grant him an exit interview and immediately provide his police shield after his retirement.  This claim fails as a retaliation claim for the same reasons that it fails as a disparate treatment claim.  *See* Point II.B.6, *supra*.

Davis cannot demonstrate that these alleged events, even if true, constitute a materially adverse employment action, because he cannot show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006) (quotations and citations omitted). Here, the alleged delay in receiving his shield did not preclude Davis from carrying a gun during the time period in question (Rehbein Decl. ¶2).  Any delay had no adverse effect on Davis, whose disability precluded him from carrying a gun in any event (Davis Dep. 298:6 – 300:4).  Thus, his complaint is spurious.

In the event he could establish an adverse action, Davis still fails to establish a *prima facie* case of retaliation, because he cannot demonstrate a causal connection between his protected activity and not immediately receiving his shield at retirement.  Here, there was a gap of over six months between the filing of his complaint and the alleged adverse action.  Such a time gap is too long to defeat summary judgment in a retaliation claim.[26]

---

[26] *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citing with approval a holding that a three-month lapse of time is too long and stating that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that temporal proximity must be 'very close.'"); *Garrett v. Garden City Hotel, Inc.*, No.

Although a claim of retaliation under the NYCHRL "does not require a finding of a materially adverse change in the terms or conditions of employment," *Williams*, 61 A.D.3d at 70, to sustain a retaliation claim, a plaintiff must still show that the employer's conduct was "reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin. Code. § 8-107(7); *Williams*, 61 A.D.3d at 71.[27]  Here, Davis cannot show that MTA's alleged conduct – not interviewing him upon his retirement when he did not request the interview or appear at work for the prior year and a normal delay in sending him his shield – was reasonably likely to deter a plaintiff from engaging in protected activity.

Accordingly, Davis cannot demonstrate a *prima facie* case of retaliation based on not receiving an exit interview or immediately receiving his shield.

Additionally, as with his disparate treatment claim based on the same facts, MTA articulates a nonretaliatory reason for the delay.  Davis was away on disability leave when he retired, and he never asked for an exit interview (Davis Dep. 296:18 – 297:17).  He received his shield a few months after he requested it, after a typical delay (Davis Dep. 296:18 – 300:2; Rehbein Decl. ¶3).  There is no evidence to support Davis' conclusory allegation that he was not granted an exit interview or that his shield was delayed in retaliation for his July 2006 NYSDHR complaint.  This claim should be dismissed.

### C.  Davis' Retaliation Claims Relating to His Workers' Compensation Claims Should Be Dismissed.

Davis alternatively claims MTA retaliated against him by obstructing his application for Worker's Compensation benefits, because: (1) on three occasions in around March 2007, MTA sent

---

05-CV-0962 (JFB), 2007 U.S. Dist. LEXIS 31106, at *21 (E.D.N.Y. Apr. 19, 2007) (gap of more than two months is too long) (collecting cases); *Cunningham v. Consol. Edison, Inc.*, No. 03 Civ. 3522 (CPS), 2006 U.S. Dist. LEXIS 22482, at *55 (E.D.N.Y. March 28, 2006) ("[A] passage of two months between the protected activity and the adverse employment action seems to be the dividing line.") (collecting cases).

[27] The Second Circuit has noted that this standard bears little functional difference from the federal and state standard. *Fincher*, 604 F.3d at 723.

him to appointments with doctors who allegedly were not there when he arrived (Davis Dep. 16:12 – 23:23); (2) the MTA doctor who examined him allegedly caused him pain during one examination (Davis Dep. 324:19 – 325:8); (3) MTA scheduled a hearing in Manhattan instead of Suffolk County, where he resided (Davis Dep. 300:19 – 301:2); and (4) MTA delayed his receipt of disability benefits (Davis Dep. 301:5 – 304:7). This claim is meritless.

Davis cannot demonstrate a *prima facie* case of retaliation, based on the alleged actions above as they are not materially adverse actions that might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.[28] Rather, these alleged acts are the types of petty annoyances and trivial inconveniences that do not constitute a materially adverse action. Applying the NYCHRL standard, such inconveniences would not be reasonably likely to deter a person from engaging in protected activity.[29]

Davis also cannot state a *prima facie* case of retaliation with respect to this claim, because he cannot demonstrate a causal connection between the inconveniences he alleges and his protected activity. Specifically, he cannot demonstrate that those who allegedly retaliated against him were aware of his protected activity. *Nieves v. Angelo, Gordon & Co.*, 07-2330-cv, 2009 U.S. App. LEXIS 14584, at *4-*5 (2d Cir. July 6, 2009) (summary order).[30] Here, Davis admitted that he has no idea whether those who he claims retaliated against him in connection to his Workers' Compensation claims were aware that he had filed a complaint against MTA.[31] Davis made no attempt to depose any of these individuals, or seek any further discovery on this issue, despite the

---

[28] *Burlington Northern*, 548 U.S. at 68 (2006).

[29] *Williams*, 61 A.D.3d at 71.

[30] *See also Galdieri-Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (dismissing claim of retaliation when employer's representatives were not aware or could not have reasonably understood that plaintiff had engaged in protected activity); *Velasquez v. Goldwater Mem. Hosp.*, 88 F. Supp. 2d 257, 264 (S.D.N.Y. 2000) (same).

[31] These individuals include: (1) the administrators in MTA's Medical Department who assigned him to his doctors' appointments (Davis Dep. 301:22 – 302:10); (2) the doctors who examined him (Davis Dep. 324:19 – 325:8); (3) those who scheduled his Workers' Compensation appointments/hearings (Davis Dep. 301:12 - 302:10); and (4) those who processed his disability application (Davis Dep. 301:3 -301:11; 302:11 – 302:24).

production of over 1,000 pages of records relating to his benefits claims by MTA. (Fuchs Decl., ¶30). Davis can proffer no evidence showing any causal connection between his protected activity and the handling of his Workers' Compensation or disability benefits claims.  Accordingly, Davis cannot demonstrate a *prima facie* case of retaliation with respect to these allegations, and has effectively abandoned this claim.

Accordingly, all of Davis' retaliation claims should be dismissed.

## IV.   THE PATTERN AND PRACTICE CLAIM SHOULD BE DISMISSED.

Davis may not assert pattern and practice discrimination claims based on allegations that **other** African-Americans and Hispanics at MTA PD were somehow discriminated against.

Pattern or practice disparate treatment claims involve "allegations of widespread acts of intentional discrimination against individuals." *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 158 (2d Cir. 2001).  Such claims may be brought either by the government pursuant to § 707(a) of Title VII, 42 U.S.C. 2000e-6(a), or on behalf of a class of litigants.  *See, e.g., Robinson, supra.* However, the Second Circuit, and this Court, repeatedly hold that pattern or practice claims may not be brought by private, individual plaintiffs outside of a class action context.  *See Brown v. Coach Stores,* 163 F.3d 706, 711-712 (2d Cir. 1998) (pattern and practice claims do not likely apply to individual disparate treatment suits; individual plaintiff's pattern and practice claim dismissed); *United States v. City of New York*, 631 F. Supp. 2d 419, 427 (S.D.N.Y. 2009) ("Given the significant difference between individual disparate treatment claims and pattern-or-practice claims, this Court holds that individuals cannot maintain a private, non-class, pattern-or-practice claim against Defendants.").

Here, as Davis and the other Plaintiffs have not brought a class action, they cannot assert pattern and practice claims of liability, and those claims (Amd. Cmplt. ¶ 156 - 157) should be dismissed.

## IV.    DAVIS' § 1981 CLAIMS SHOULD BE DISMISSED.

A municipal entity may only be held liable under § 1981 if the plaintiff can establish that the challenged acts were performed pursuant to a municipal policy or custom of discrimination.[32]    To meet this burden, a plaintiff must show that municipal officials committed discriminatory acts so widespread "as to constitute a custom or usage with the force of law."[33]

Davis cannot even establish that he suffered a *prima facie* case of disparate treatment discrimination, hostile work environment, or retaliation.    He received favorable treatment with respect to assignment to the ICTF, training, and overtime.    He cannot establish any hostile work environment under any standard.    Davis' allegations of retaliation are similarly without support.    He has not established that any MTA official engaged in any discriminatory practice that was "persistent or widespread."[34]

As he has not proffered evidence sufficient to sustain a finding of unlawful discrimination or retaliation on any ground, *a fortiori,* Davis cannot meet his burden of demonstrating a municipal policy or custom of discrimination necessary to sustain a § 1981 claim against MTA.    To the contrary, the evidence proves that (1) the policy and custom of MTA was to prohibit and remedy race discrimination and unlawful harassment; (2) MTA provided several avenues of recourse to its employees if they believed they had been the victim of employment discrimination, including the MTA Office of Civil Rights and a union grievance and arbitration procedure; and (3) MTA's non-

---

[32] *Gutierrez v. City of New York,* Case No. 08-cv-6537 (LBS) (JCF), 2010 U.S. Dist Lexis 125484 (S.D.N.Y. Nov. 29, 2010) (citations omitted); *Rumala v. New York City Transit Auth.,* Case No. cv-05-5428 (CBA)(JMA), 2005 U.S. Dist. Lexis 19766, *30 (E.D.N.Y. Aug. 26, 2005).

[33] *Id.* The standard of liability for a municipality under § 1981 differs from the class action "pattern or practice" theory asserted by Plaintiffs in that municipal liability under § 1981 is not a class action theory, but rests on the discriminatory acts of those municipal officials with final, decisionmaking authority, *Rumala, supra,* whereas pattern or practice claims involve class allegations of intentional, widespread discrimination, which attempt to demonstrate that discrimination was the employer's "standard operating procedure." *Int'l Bhd of Teamsters,* 431 U.S. at 336. *See Bishop v. Best Buy Co., Inc.,* No. 08 Civ. 8427 (LBS), 2010 U.S. Dist. LEXIS 110631, *24-25 (S.D.N.Y. Oct. 13, 2010) (rejecting § 1981 claims against New York City under a "pattern or practice" theory, in part because a municipality may not be liable under § 1981 on the basis of *respondeat superior*) (citing *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978)).

[34] *Rumala, supra.* 2005 U.S. Dist. Lexis 19766, * 30. See Point VII, *infra,* regarding his § 1981 claims against the individual Defendants.

discrimination policy and practices were widely publicized, distributed and posted (Fuchs Decl. ¶¶ 17-19, Ex. 16-18; Neal Dep. 8:2-4, 20:3-15, 58:25 – 59:25).

Accordingly, Davis' § 1981 claims should be dismissed.

## V.    DAVIS' § 1983 CLAIMS SHOULD BE DISMISSED.

A plaintiff cannot bring concurrent Title VII and § 1983 claims, unless they are based on distinct legal rights – *i.e.*, a Title VII claim precludes a § 1983 claim, unless the § 1983 claim is based on an alleged violation of some law other than Title VII.[35]

Plaintiff's § 1983 claims for disparate treatment, hostile work environment and retaliation duplicate his Title VII claims.  His § 1983 claim alleges no violation of legal rights separate and distinct from his Title VII claim.  No cognizable violation of any provision of the United States Constitution is articulated in the Complaint or demonstrated by the evidence (Amd. Cmplt. ¶ 216).

As with § 1981, a municipal entity also cannot be liable under § 1983, unless the plaintiff can establish that the challenged acts were performed pursuant to a municipal policy or custom of discrimination.  *Rumala*, 2005 U.S. Dist. Lexis 19766 at *30.  Davis has failed to establish unlawful discrimination or retaliation.  *A fortiori*, he cannot establish that he suffered discrimination pursuant to a municipal policy or custom.

Accordingly, Plaintiff's § 1983 claims should be dismissed.

## VI.    THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED.

Davis asserts claims under NYSHRL, NYCHRL, § 1981 and § 1983 against individual Defendants Elliot Sander, William Morange, Kevin McConville and Terrence Culhane.  Davis cannot demonstrate that the individual Defendants are liable under any of these statutes.

---

[35] *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993); *Igielnik v. NYC Human Resources Admin.*, 94 Civ. 0810 (HB), 1996 U.S. Dist. LEXIS 3635, at *7-8 (S.D.N.Y. March 26, 1996) (dismissing § 1983 retaliation claims against employer and individual defendant, because they were not based on an alleged violation of a law other than Title VII). *See also Moche v. City Univ. of New York*, 781 F. Supp. 160, 168 (E.D.N.Y. 1992), *aff'd*, 999 F.2d 538 (2d Cir. 1993) (plaintiff could not bring concurrent Title VII and § 1983 retaliation claims).

## A.    § 1983

To demonstrate individual liability under § 1983, Davis must "show that the official, acting under color of state law, caused the deprivation of a federal right." *Davis v. County of Nassau*, 355 F. Supp. 2d 668, 675 (E.D.N.Y 2005). Individual defendants sued solely in their official capacities cannot be found personally liable. *Hafer v. Melo*, 502 U.S. 21, 27 (1991) (quoting *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989)).

### 1.    Defendants Named in Their Official Capacities

Here, Defendants Elliot Sander and William Morange cannot be held individually liable under § 1983, because they are sued purely in their official capacities.[36]  Similarly, to the extent Defendants Kevin McConville and Terrence Culhane are sued in their official capacities, they cannot be held individually liable. As Davis cannot establish the liability of MTA under § 1983, the claims against the individual Defendants in their official capacities should be dismissed.

### 2.    McConville

To the extent McConville is sued in his individual capacity, Davis makes no allegation and proffers no evidence that McConville personally engaged in discriminatory or retaliatory conduct. Davis does not allege that McConville took any action against him, and McConville had no involvement with any decision concerning Davis. As there is no evidence that McConville acted under color of state law to deprive Davis of any federal right, he is not individually liable under § 1983.

### 3.    Culhane

All of Davis' allegations regarding Culhane are time-barred. Plaintiff alleges no discriminatory conduct by Culhane occurring since May 4, 2004. None of the allegations concerned comments or conduct directed at Davis, except a single alleged time-barred comment in 1998 (Davis Dep. 98:22 – 98:24). Davis' time-barred allegations against Culhane are mostly based

---

[36] As these individuals are sued purely in their official capacities, they cannot be, and Plaintiff does not claim that they are, individually liable under NYSHRL or NYCHRL.

- 22 -

on hearsay, and they are all insufficient to state a claim against either Culhane or MTA.[37]  Davis does not allege that Culhane took any personal action against him, engaged in any act contributing to a hostile work environment, or had any involvement with any decision concerning Davis.  As there are no allegations that Culhane acted under color of state law to deprive Davis of any federal right, he is not individually liable under § 1983.

Davis' § 1983 claim against the individual Defendants should thus be dismissed.

**B.    § 1981**

To establish liability under § 1981 against an individual in his official capacity, Plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom by municipal officials.[38]  An individual official's acts can rise to the level of policy when senior personnel knowingly acquiesced in their subordinate's discriminatory behavior.[39]  A defendant sued in his individual capacity under § 1981 may be held liable where the plaintiff can demonstrate "some affirmative link to causally connect the actor with the discriminatory action. . . A claim seeking personal liability under § 1981 must be predicated on the actor's personal involvement." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000).

Davis has not demonstrated that MTA had an official custom or policy of discriminating on the basis of race.[40]  He cannot produce evidence demonstrating that any MTA official knowingly acquiesced in any discriminatory conduct he claims to have suffered.  The § 1981 claims against the individual Defendants in their official capacities should be dismissed.

---

[37] *See* Point II.C.1, *supra.*

[38] *Wilson*, 2005 U.S. Dist. LEXIS 21620 at * 72.  *See Section V, supra.*

[39] *Rumala*, 2005 U.S. Dist. LEXIS 19766 at *30.

[40] *See* Section V, *supra.*

### 1.    McConville

Davis alleges no personal involvement by McConville in any alleged discriminatory conduct, and proffers no evidence that McConville had any personal involvement in any decision concerning his employment. His claim against McConville under § 1981 should be dismissed.

### 2.    Culhane

Davis' allegations concerning Culhane predate May 2003. The only alleged conduct by Culhane directed at Davis concerns a comment allegedly made in 1998. Davis alleges no timely claim of discriminatory conduct by Culhane. Davis' § 1981 claim against Culhane should be dismissed.

The § 1981 claims against the individual Defendants should thus be dismissed.

### C.    NYCHRL and NYSHRL

There are two theories for imposing individual liability under the NYCHRL and NYSHRL. First, an individual may be liable if he engages in prohibited discriminatory activity, and he has an "ownership interest [in the business] or power to do more than carry out personnel decisions made by others."[41] *Patrowich v. Chemical Bank*, 483 N.Y.S.2d 659, 661 (N.Y. 1984). Second, some courts state that an employee may be liable for aiding and abetting discriminatory practices. *Priore*, 307 A.D.2d at 74, n.2. Aiding and abetting liability requires "proof initially as to the liability of the employer." *Priore*, 307 A.D.2d at 74, n.2.

### 1.    McConville

Davis makes no allegation and proffers no evidence that McConville personally engaged in or aided or abetted discriminatory or retaliatory conduct. Davis also cannot demonstrate an aiding and abetting claim against McConville, because Davis cannot establish the liability of MTA. *Id.* Accordingly, McConville cannot be individually liable under NYSHRL or NYCHRL.

---

[41] *See also Priore v. N.Y. Yankees*, 307 A.D.2d 67, 74 (1st Dept. 2003) (Under NYCHRL, an employee may be individually liable when he engages in prohibited discriminatory activity and also "act[s] with or on behalf of the employer in hiring, firing, paying, or in administering the 'terms, conditions or privileges of employment' – in other words, in some agency or supervisory capacity.").

## 2.     Culhane

All of Davis' allegations regarding Culhane are time-barred under the three-year limitations period of the NYSHRL and NYCHRL.  Davis does not allege that Culhane took any discriminatory action or aided in any discriminatory action against him during the NYSHRL and NYCHRL limitations period.  Additionally, Davis cannot demonstrate an aiding and abetting claim against Culhane, because he cannot establish MTA's liability.

Accordingly, Davis' individual liability claims against Culhane pursuant to NYSHRL and NYCHRL should be dismissed.

## CONCLUSION

Davis proffers no evidence that he was discriminated against because of his race, retaliated against, or subjected to a racially hostile work environment.  Davis was treated more favorably than almost any other Detective at MTA PD.  His complaints are frivolous.  For all the foregoing reasons, Defendants respectfully request that the Court grant Defendants' summary judgment motion to dismiss Plaintiff Kenneth Davis' claims in the Amended Complaint in their entirety with prejudice.

Dated: New York, New York            Respectfully submitted,
       January 21, 2011

                                             LITTLER MENDELSON
                                             A Professional Corporation

                                           By: ___/s/_____
                                              Craig R. Benson
                                              Stephen A. Fuchs
                                            Elias J. Kahn
                                       900 Third Avenue, 8th Floor
                                     New York, NY  10022
                                     212.583.9600

                                   Attorneys for Defendants

Firmwide:99071475.1 039247.1016
12/8/10