UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Marilyn Y. Armstrong, Marshall R. Mazyck, Lillian Alvarado, Gordon Urquhart, Blake J. Willett, Bryan Henry, Kenneth Davis, Eric Moore, Nzingha M. Kellman, and Michael Benjamin,

    Plaintiffs,

 -against-

Metropolitan Transportation Authority, Elliot Sander, Executive Director and Chief Executive Officer of the MTA, William Morange, Deputy Executive Director/Director of Security of the MTA, Kevin McConville, Chief of the MTA Police Department, and Terrance Culhane, Assistant Deputy Chief of the MTA Police Department,

    Defendants.

Civil Action No. 07-3561(DAB)(HBP)

ECF Case

---

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF SUMMARY JUDGMENT
AGAINST PLAINTIFF MICHAEL BENJAMIN**

LITTLER MENDELSON
A Professional Corporation
Craig R. Benson
Stephen A. Fuchs
Elias J. Kahn
900 Third Avenue, 8th Floor
New York, NY  10022
212.583.9600

Attorneys for Defendants
Metropolitan Transportation Authority, Elliot Sander, William Morange, Kevin McConville, and Terrence Culhane

# PRELIMINARY STATEMENT

Because Michael Benjamin's pleaded claims cannot withstand summary judgment, his opposition raises new, unpleaded claims, misrepresents evidence, and obfuscates the record. Plaintiff cannot defeat summary judgment through misinformation and conclusory allegations, because each claim is either barred on procedural grounds, contrary to the evidence, or fails on its merits.

## I.   PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM FAILS.

Benjamin's opposition fails to create an issue of fact in support of his hostile work environment claim. His primary claim, that Sergeant Jeffrey Giel ("Giel") subjected him to a racial slur in November 2005, cannot support a hostile work environment claim, either alone or together with his other allegations. In this regard, Plaintiff misapplies case law holding that a single incident can form the basis for a hostile work environment claim, *e.g., Cruz v. Coach Stores, Inc.* 202 F.3d 560, 571 (2d Cir. 2000); *La Grande v. Descrescente Distrib. Co.*, 08 Civ. 3010, 09 Civ. 1789, 370 F. App'x 206, 210 - 211 (2d Cir. 2010). Those holdings are explicitly dependent on the circumstances in which the slur was used in front of subordinates or coworkers. Benjamin's case illustrates where a single alleged slur is *not* sufficient to create a hostile work environment -- a slur that according to Benjamin was used in the midst of a heated argument between Giel and Benjamin witnessed by no one else.[1] Plaintiff proffers no evidence to support his allegation other than his own testimony. After a full hearing, an impartial Arbitrator, as well as MTA's Office of Civil Rights ("OCR"), found the allegation could not be substantiated (Fuchs Decl. Ex. 23).

Benjamin's remaining hostile work environment claims, either alone or together with the alleged slur, are insufficient. His excessive scrutiny allegations regarding Sergeant Kristin Murray do not support a hostile work environment claim,[2] because, *inter alia,* they cannot show that he was treated differently on the basis of his race.[3] In fact, the evidence demonstrates that Murray treated all Police Officers she supervised in the same manner (Murray Decl. ¶¶3-6, Ex. A). Plaintiff's unsupported claims concerning Sergeant James Quinn and Lieutenant Francis Zaino's alleged rude comments (e.g., his claims that they called him "crazy," "useless" and "stupid" and that Zaino allegedly said that Police Officers in Benjamin's district are "lazy") are racially neutral. Benjamin has shown no connection between race and these alleged comments, other than to ask the Court to assume that they are based on racial stereotypes. Such racially neutral remarks cannot demonstrate a hostile work environment based on race. In this regard, Plaintiff's allegation that "Zaino suggested that they shut down Benjamin's District, which was comprised mostly of 'lazy' African-Americans" (Pl.'s Br. p. 13) misrepresents

---

[1] *See Brown v. Coach Stores*, 163 F.3d 706, 708, 713 (2d Cir. 1998) (no hostile work environment where supervisor said employee looked "black like a real nigger" and made other racist remarks to plaintiff).
[2] *Leung v. New York Univ.*, 2010 U.S. Dist. LEXIS 33265, at *22 (S.D.N.Y. March 29, 2010) (holding that alleged "unfair scrutiny" by an employer does not constitute a hostile work environment under Title VII, the NYSHRL and the NYCHRL); *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001), *aff'd*, 51 F. App'x 55 (2d Cir. 2002) (excessive scrutiny of employee's lateness not deemed adverse employment actions).
[3] *Brennan v. Metropolitan Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999). *See* Defendants' Moving Brief ("Def. Br.") at p. 8.

1

the record. Benjamin testified that he heard **second-hand** that Zaino said that officers in the Flatbush, Brooklyn District were lazy (Benjamin Dep. 76:1 – 77:22). He specifically testified that he did not know if Zaino was referring to the black officers in that district (*Id.*). Thus, even if Zaino had made this inadmissible hearsay statement, which he did not, it could not contribute to a hostile work environment, because it had no relation to race. *Brennan*, 192 F.3d at 318.

Similarly, Benjamin's allegations that he was asked to surrender his weapon[4] and that officers were spreading rumors that he was emotionally unstable[5] and not getting along with other officers[6] have no connection to his race and are not actionable. Further, his allegations concerning threatened discipline, reprimands and negative memoranda in his personnel file are insufficient to create a hostile work environment under any standard.[7] Even when taken together, these alleged acts amount to nothing more than trivial inconveniences and petty annoyances, not a hostile work environment based on Benjamin's race.[8] Accordingly, summary judgment should be granted dismissing Benjamin's hostile work environment claim.

## II. PLAINTIFF PROFFERS NO EVIDENCE THAT HE WAS DENIED PROMOTIONS BASED ON HIS RACE.

### A. Plaintiff's Time-Barred 2003 Detective Promotion Claim Fails.

Benjamin cannot avoid summary judgment on his 2003 promotion claim, because it is time-barred. (Def.'s Br. p. 12-13). Ignoring this, Benjamin dissects the qualifications of the Caucasian MTA PD members selected for Detective in 2003 and speculates that different decision makers could have chosen him. Plaintiff questions whether two Caucasian members selected for Detective in 2003, Patrick Inzinna and Douglas Rucano, were better choices for Detective than Benjamin (Pl.'s Br. at pp. 4-5).

Plaintiff's analysis is unavailing. The law is clear that the Court should not assume the role of a "super-human resources department" and substitute its own personnel decisions for those of the employer. For the Court to find that MTA PD's reasons for selecting certain Caucasian candidates over Benjamin were a pretext for discrimination, Benjamin's "credentials would have to be so superior to the credentials of the person selected for the job that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (citations omitted).

---

[4] Benjamin's allegation that weapons are only removed from African-Americans is speculation unsupported by any evidence.
[5] Benjamin testified that he was "emotionally upset" (Am. Compl. ¶181; Benjamin Dep. 152:20-24, 153:18 – 154:1).
[6] Benjamin testified that he had several conflicts with other officers (Benjamin Dep. 95:23 – 98:8; 118:19-119:18).
[7] *See, e.g., Bennett*, 136 F. Supp. 2d at 248 (reprimands and threats of disciplinary action are not adverse employment actions).
[8] Plaintiff's citation to *Schwapp v. Town of Avon*, 118 F.3d 106 (2d Cir. 1997), is misplaced. In *Schwapp*, plaintiff was directly subject to severe racial harassment, in addition to allegedly learning second-hand of racial comments. *Id.* at 108. Here, Benjamin alleges he was subject to a single racial slur with no one else present. Benjamin also misrepresents *Latino Officers Ass'n v. City of New York*, 2003 U.S. Dist. LEXIS 10057 (S.D.N.Y. June 17, 2003), in which the Court denied a pre-discovery motion to dismiss because the hostile work environment allegations in the complaint were very broad and alleged department wide patterns of retaliatory conduct by common supervisors. *Id.*, at *2-3. This motion comes after exhaustive discovery, and Benjamin alleges that he was singled out for discriminatory conduct.

Plaintiff does not meet this standard. He claims only that MTA selected certain Caucasian members for Detective who had comparable seniority and received some negative comments from interviewers, and he opines that he would have been just as viable a choice (Pl.'s Br. pp. 4-5). This assertion is belied by the evidence, which indisputably shows that no MTA PD member was selected for Detective in 2003 to whom Benjamin was "clearly superior," based on Benjamin's lack of relevant experience and negative interview evaluations. The record establishes beyond dispute that Benjamin had among the lowest interview scores of 30 applicants for Detective in 2003. All the Police Officers selected for Detective that year had much higher interview scores than Benjamin and received more positive comments (Fuchs Reply Decl. Exs. 2, 11-13). For example, Inzinna and Rucano received scores of 37/50, 40/50 and 38/50, and 38/50, 40/50 and 38/50, respectively (Fuchs Reply Decl. ¶ 3, Ex. 2). In contrast, Benjamin received much lower interview scores of 18/50, 19/50 and 24/50, resulting in a composite interview score that ranked 25th out of 30 candidates interviewed for Detective (Fuchs Decl. Ex. 2).

By using statistics inappropriately, Benjamin unsuccessfully attempts to minimize the fact that two of the individuals who were selected in the 2003 Detective selection process, Edwin Ruiz (Hispanic) and Anthony Pressley (African-American), are in the protected classification at issue in this lawsuit.[9] Benjamin's purported statistics concerning Detective selection are also invalid, because the figures he relies upon do not reference the relevant applicant pool – *e.g.* how many minorities or Caucasian officers applied for Detective, and the percentage of Caucasian members who applied for Detective and were not promoted.[10]

Accordingly, the Court should grant summary judgment on Benjamin's claim relating to his 2003 application for Detective.

**B. Plaintiff's 2004 Detective Selection Claim Fails.**

Plaintiff's opposition fails to show that the legitimate business reasons articulated by MTA for the selection at issue are a pretext for discrimination. He ignores his conspicuous lack of police activity at MTA PD and poor interview performance, and misrepresents the record by incorrectly comparing himself to individuals who applied and were selected for an assignment for which Benjamin never applied – assignment to MTA PD's Interagency Counterterrorism Task Force ("ICTF").

Plaintiff's attack on MTA's concerns regarding his problems working with other officers fails to defeat summary judgment. Benjamin would not have been selected for Detective even if this issue was not raised.[11] A

---

[9] Benjamin's comparison of the seniority of two minority members selected with that of three of nine Caucasians selected is too small a sample to be statistically significant. *See, e.g., Shub v. Westchester Cmty. College*, 556 F. Supp. 2d 227 (S.D.N.Y. 2008).

[10] In addition, in the years Benjamin applied for Detective, the percent of African-American Detectives exceeded the percent of African-Americans in MTA PD as a whole. (Def.'s Response I to Pl.'s Counterstmt of Facts ¶I) (Fuchs Reply Decl. Exs. 3, 4).

[11] Benjamin's seniority and experience were not comparable to those MTA PD members selected for appointment in 2004 – Kenneth Stewart (Caucasian), Haydee Urena (Hispanic) Richard Mattera (Hispanic). Mattera had been with the MTA PD for over ten years at the time he was promoted (Jeremias Decl. Ex. BB). Stewart had worked as a police officer at NYPD for 4.5 years prior to his selection (Jeremias Decl. Ex. LL). Urena had three years of "extensive investigative experience" with the New York City Department of Investigations and had attended "several major investigative schools" prior to commencing employment with MTA PD (Fuchs Reply Decl. Ex 9).

review of his 2004 application reveals that Benjamin was never recommended for Detective by his supervisors. The comments of Benjamin's direct supervisors, Sergeant William Ranaldo ("Ranaldo") and Lieutenant Francis Zaino ("Zaino"), unequivocally state that Benjamin was not ready to be a Detective.[12]

Plaintiff asserts, blatantly misrepresenting the evidence, that "Benjamin's 2004 application for Detective clearly stated that Benjamin is 'reliable and works well with others.'" (Pl.'s Br. p. 7). This comment is Benjamin's own assessment of his abilities, written in the first person – *i.e.,* "I am very reliable and work well with others." (Fuchs Decl. Ex. 38 at D00007247). There is no evidence that any of his supervisors ever agreed with that statement.

Benjamin's claim that Zaino discriminated against him by submitting the August 3, 2004 memorandum is disproven by the evidence, which shows that it was part of a submission due August 4, 2004. This submission was one of seven similar memoranda that Zaino submitted at that time relating to seven Detective applicants. Zaino only recommended one, Vanessa Parker (African-American), noting that Benjamin and the other five applicants (three Caucasians and two African-Americans) needed additional experience before being considered for Detective (Zaino Decl. ¶11, Ex. D; Martelli Decl. ¶ 7, Ex. B).

Plaintiff takes issue with Zaino's statement that Plaintiff had been having problems with other officers (Pl.'s Br. p. 8). However, Benjamin testified that he had altercations with African-American co-workers prior to and after August 3, 2004 (Benjamin Dep. 95:23 – 98:8, 118:19 – 119:18; Fuchs Decl. Ex. 19).

Finally, Plaintiff attempts to compare his seniority to that of certain Caucasian members selected for Detective in an earlier, June 2004 solicitation. There, MTA sought applications of those who wished to be assigned to the ICTF, MTA PD's counterterrorism unit. Benjamin did not apply for this assignment (Pl. Counterstatement of Facts ¶ KK). Because he did not apply, the selected individuals are not similarly situated to Benjamin, and he cannot assert a claim of discrimination regarding those selections.[13] Any allegations about these individuals are immaterial. *Aulicino, supra* n. 13.

C.  **Plaintiff's Denial of Training Claim Fails.**

Benjamin attempts to support his unpleaded allegation that he was discriminatorily denied training by alleging that discretionary training was not posted (Pl.'s Br. p. 9). This allegation fails to defeat summary judgment, as he 1) admits that he knew that other Police Officers received discretionary training courses (Benjamin Dep. 102:24 – 103:10); 2) never sought out or even inquired from his supervisors or anyone at MTA

---

[12] The "Comments from First Line Supervisors" in Benjamin's abstract state that "[t]he officer has been limited in his field experience to do [sic] to security post constraints and would benefit from additional exposure within the department. The officer would make a fine candidate for the position with additional experience in the department and the officer has expressed the willingness to do so." (Fuchs Decl. Ex. 38 at D00007247). Under "Investigative Skills" Benjamin's supervisors wrote "[i]n the limited time I have been assigned to supervise this officer I have not observed the officer using any of his investigative skills." (*Id.*).

[13] *Aulicino v. New York City Dep't of Homeless Servs.,* 580 F.3d 73, 80 (2d Cir. 2009) (to establish a discriminatory failure to promote, plaintiff must establish that he applied for and was qualified for a job for which the employer was seeking applicants); *Shumway v. UPS,* 118 F.3d 60, 64 (2d Cir. 1997) (Plaintiff must demonstrate employees outside of his protected classification, similarly situated to him in all material respects, were treated better than he was).

whether any type of discretionary training was available; and 3) fails to identify any white Police Officers who were assigned to training courses that he requested but did not receive. Moreover, Benjamin's only excuse for not researching and requesting such courses on his own, as did Police Officers Keyla Hammam (African-American), Jaimie Atkinson (Caucasian) and Vanessa Parker (African-American) did (Hammam Decl., ¶2; Atkinson Decl. ¶2), was that he was unaware that he could do so. Benjamin's lack of personal initiative is not a basis for Defendants' liability.

Benjamin also fails to show that he suffered an adverse action because he did not receive training. He cites no evidence supporting a finding that his lack of training had any impact on his compensation or career development.[14] His claim that the training was necessary to apply for certain MTA PD assignments such as ICTF (Pl.'s Br. pp. 8-9) is irrelevant, because Benjamin (whose application for Detective cited two counterterrorism courses he attended, one at MTA PD and one at Baltimore PD) (Fuchs Decl. Ex. 38 at D00007246), never applied for assignment to ICTF[15] or any position that required any specific training. Lack of training was not the reason he was not selected for Detective. *See* Points II.A and II.B, *supra*.

Plaintiff also fails to show an inference of discrimination with respect to the assignment of training. He alleges without support that his supervisors, Zaino and Murray, assigned training to Caucasian officers, but he does not identify which Caucasian officers, what training they allegedly received, or when it was assigned (Pl.'s Br. p. 9). These conclusory allegations cannot survive summary judgment.[16] Moreover, Benjamin's fellow Plaintiff, Eric Moore (African-American), who was also supervised by Zaino and Murray, received at least four discretionary training courses during the relevant time period (Fuchs Reply Decl. Ex. 14).

### III.   PLAINTIFF'S DISPARATE DISCIPLINE CLAIM FAILS.

Benjamin fails to create an issue of fact in support of his disparate discipline claim arising from the imposition of a six hour penalty by an Arbitrator for his failure to perform his duties in connection with the 2005 incident with Sergeant Giel. There is no dispute that Benjamin's discipline was based upon the specific findings of fact and decision of an independent Arbitrator after a full hearing where Benjamin was represented by counsel. *Collins v. N.Y. City Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002), which found that an assessment of discipline upheld by an arbitrator weighs strongly against any evidence that the discipline was discriminatory, is directly on point. Benjamin's assertion that claims of race discrimination were not before the Arbitrator 1) does not distinguish *Collins, supra;* 2) is incorrect and irrelevant, as the Arbitrator specifically addressed, in determining the propriety of the discipline assessed against Benjamin both that a) Benjamin's

---

[14] *See Nakis v. Potter*, 2004 U.S. Dist. LEXIS 25250, at *62 (S.D.N.Y. Nov. 30, 2004) (A denial of training constitutes an adverse employment action only when it "bear[s] on either plaintiff's opportunities for professional growth and career advancement or directly on plaintiff's compensation.").

[15] Unlike Police Officer Michael Pizzo, Benjamin never applied to ICTF and never, unlike Hammam, Atkinson and Parker, sought such training. Thus, Benjamin's claims concerning Pizzo's training (Pl.'s Br. pp. 9-10) are not material, because he is not similarly situated to Pizzo.

[16] *See, e.g., Chin v. ABN-AMRO N. Am., Inc.*, 463 F. Supp. 2d 294, 301 (E.D.N.Y. 2006) ("[T]he Court is required to disregard allegations which are purely conclusory and devoid of concrete particulars.").

5

allegation that Giel directed a racial slur towards him could not be sustained; and b) that Giel's conduct was not discriminatory (Fuchs Decl. Ex. 23 at D00010115, D0000118).[17]

In another misrepresentation of the evidence, Benjamin claims that the record "demonstrates that the epithet was acknowledged by Police Officer Alfred Schreck ("Schreck") to have been used at the time of the incident, when he documented the allegation in a contemporaneous memo." (Pl.'s Br. p. 11). Contrary to this statement, in his memorandum, Schreck wrote: "At no time did P.O. Benjamin state to me that Sgt. Giel called him a 'nigger,' nor did I witness any of the original altercation between the two men." (Jeremias Decl. Ex. G). Schreck never acknowledged that Giel used any racial epithet. The Arbitrator decided, based in large part on Schreck's statement, that the evidence did not support Benjamin's allegation (Fuchs Decl. Ex. 20 at D00010116 – 10118).[18]

## IV. PLAINTIFF'S RETALIATION CLAIMS FAIL.

All but one of Benjamin's retaliation claims are raised for the first time in opposition to this motion. The only retaliation claim he raised in his EEOC Charge or in the Amended Complaint in this action is that his weapon was removed and he was assigned to desk duty for four days in November 2005. (Am. Compl. §181; Fuchs Decl. Ex. 1,2). Benjamin testified that his retaliation claims were limited to his assignment to desk duty after he complained about Giel in November 2005 (Benjamin Dep. 166:19 – 167:2). This Court does not consider claims raised for the first time in opposition to summary judgment. Benjamin was obligated to seek to amend the Complaint if he wished to assert such claims.[19] Even if the Court were to consider Benjamin's new retaliation claims, as set forth below, each such claim fails on its merits as well.

### A. Zaino's August 3, 2004 Memorandum Was Not Retaliatory.

Plaintiff places heavy emphasis on his claim, raised for the first time in his opposition, that Zaino's August 3, 2004 memorandum submitted as part of Benjamin's 2004 Detective application constituted retaliation for Benjamin's complaints about Murray. Even if this new claim is considered, it fails to demonstrate an issue of fact as to retaliation for several reasons. First, Zaino's memorandum is immaterial, because Benjamin would not have been selected for Detective in 2004 even if it had not been written (Zaino Decl. ¶10; Fuchs Decl. Ex.

---

[17] Benjamin again attempts to mislead the Court by noting that he objected to the Arbitrator's specific findings of non-discrimination (Jeremias Decl. Ex. E); but omits that the Arbitrator *denied* his request to revise the decision to remove those findings (Fuchs Reply Decl. Ex. 1).

[18] *Petrovits v. N.Y. City Transit Auth.*, 2003 U.S. Dist. LEXIS 18347 (S.D.N.Y. Oct. 12, 2003), is inapposite. There, prior to the court action, an arbitrator decided whether the plaintiff (who alleged gender discrimination in promotions) had been performing tasks above her job title and was not asked to decide any issues that had any relation to her gender. *Id.* at *11. Here, the issue of whether Giel directed a racial slur to Benjamin was squarely before the Arbitrator, and he found the allegation to be unsubstantiated. Moreover, the basis for the discipline imposed upon Benjamin by the Arbitrator, his failure to perform his duties as directed by Giel, is undisputed (Fuchs Decl. Ex. 23 at D00010118).

[19] *See Fullwood v. Ass'n for the Help of Retarded Children*, 08 CV 6739 (DAB), 2010 U.S. Dist. Lexis 107713, *19-20 (S.D.N.Y. Sept. 28, 2010) (Court will not consider claims raised for the first time in opposition to summary judgment); *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (affirming decision not to consider claims raised for the first time in opposition to motion for summary judgment); *Brandon v. City of New York*, 705 F. Supp. 2d 261, 278 (S.D.N.Y. 2010) ("It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment.").

38). Second, Zaino had legitimate business reasons for writing the memorandum. Specifically, at the time in question, Zaino wrote this memorandum for Benjamin and for six other candidates for Detective in 2004 as their second line supervisor, and it was due at that time (Zaino Decl. ¶¶8-11, Ex. D). Zaino recommended only one of the seven applicants who reported to him, Vanessa Parker, African-American, specifically noting in separate memoranda that Benjamin and five others would benefit from more experience before being considered for Detective (Zaino Decl. ¶11, Ex. D). Zaino's memorandum disagreed with Benjamin's representation in his abstract that he "works well with others" (Zaino Decl. ¶8, Ex. C).[20] Benjamin admitted he had conflicts with other Police Officers in his testimony (Benjamin Dep. 95:23 – 98:8, 118:19 – 119:18). Of the seven Detective applicants, only Benjamin complained about Murray. Zaino's submission of seven similar memoranda for Detective applicants at the same time, because of the August 4, 2004 deadline for submissions, disproves any causal connection based solely upon the timing of Benjamin's complaint and Zaino's memorandum, and rebuts Benjamin's attempt to demonstrate that MTA PD's legitimate, non-retaliatory reasons for the memorandum are a pretext for unlawful retaliation.[21]

**B.    The August 2004 Letter of Instruction Was Not Retaliatory.**

Benjamin also claims he was retaliated against for his August 1, 2004 hostile work environment complaint when Murray issued him a letter of instruction ("LOI") for losing his memo book in October 2004. This claim fails because a LOI is not an adverse, disciplinary action at the MTA PD (Provenzano Dep. 158:7-17; O'Meara Dep. 76:14-77:20). A written warning does not, as a matter of law, constitute an adverse retaliatory employment action where it does not affect the material terms or conditions of Plaintiff's employment.[22] Plaintiff claims that the LOI constituted an adverse employment action because the LOI remained in his personnel file, where it could be considered if he applied for promotion. However, Benjamin never applied for an assignment after receiving the LOI in August 2004. Accordingly, the LOI had no consequence and was not "reasonably likely to deter a person from engaging in protected activity."[23] Benjamin also does not dispute that he left his memo book unattended and lost it (Jeremias Decl. Exs. S and T). No evidence rebuts this legitimate, non-retaliatory reason for issuing the LOI. Contrary to Benjamin's claim, there is no evidence to support his theory that memo book was intentionally stolen and hidden to "set him up." Likewise, the evidence shows that his allegation that a white member, Matthew Reilly, also lost his memo book

---

[20] As noted in Point II.B, *supra*, Benjamin falsely claims that the comments in the "First Line Supervisor" section of the abstract were "generally positive" and blatantly attempts to mislead the Court by stating that Zaino "contradicted the statements in the abstract claiming that Benjamin gets along well with others" (Pl.'s Br. p. 7).

[21] *See, e.g., Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271-272 (2001) (temporal proximity of the protected activity to the adverse action is insufficient where intervening events disprove any inference of causality). Here, the August 4, 2004 deadline for Zaino's submissions is an intervening event explaining the timing of the document at issue; *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (The temporal proximity of events alone is insufficient).

[22] *See, e.g., Cody v. County of Nassau*, 577 F. Supp. 2d 623, 645-46 (E.D.N.Y. 2008) *aff'd*, 345 F. App'x 717 (2d Cir. 2009) (threats of disciplinary action and issuance of counseling notices were not adverse retaliatory employment actions); *Mullins v. City of New York*, 626 F.3d 47, 54 (2d Cir. 2010), cited by Plaintiff, is inapposite, because the plaintiff there was subject to an internal affairs investigation, which "carries with it a possibility of termination."

[23] N.Y.C. Admin. Code § 8-107(7); *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).

but did not receive an LOI, is indisputably false (Jeremias Decl. Exs. S and T; Murray Decl. ¶7, Ex. C).

C. **The Removal of Benjamin's Firearm in October 2004 Was Not Retaliatory.**

Benjamin now claims for the first time that the removal of his weapon in October 2004, after he was observed in an emotionally distressed state on duty, constituted retaliation for his earlier complaint about Murray in August 2004. Because Murray reported that she had observed Benjamin emotionally upset, representatives of the MTA PD visited him at home, temporarily removed his weapon and recommended him for counseling. Benjamin testified that (1) his weapon was returned to him soon after it was removed; (2) he was cleared on the same day he went to counseling; (3) he missed no days of his regular patrol; and (4) he lost no pay (Benjamin Dep. 126:6 – 127:21). Because of the potential for suicide or other violent action by an armed Police Officer, an officer reporting emotional distress is a safety risk (Fuchs Decl. Ex. 17 [D'Agostino Decl.] ¶3), and for that reason, MTA has a practice of removing the officer's weapon in such circumstances. Such legitimate, temporary action does not constitute adverse retaliatory action.[24]

D. **Benjamin's Discipline, Removal of Plaintiff's Weapon and Assignment to Modified Duty and Desk Duty Were Not Retaliatory.**

Benjamin also claims he received a command discipline, his weapon was temporarily removed again, and he was temporarily assigned to modified duty in retaliation for his complaint about Giel (Pl.'s Br. p. 19). The temporary removal of his weapon and very brief assignment to modified duty are not adverse retaliatory actions.[25] Benjamin was "emotionally upset"[26] at the time MTA removed his weapon in November 2005 (Benjamin Dep. 152:20-24; 153:18-154:1; Am. Compl. § 181). MTA thus had a legitimate reason for removing his firearm and assigning him to modified duty. He has not shown this reason is pretextual.

The command discipline assessed against Benjamin merely initiated the process for formal charges against him (Giel Dep. 76:6-11). The discipline imposed upon Benjamin was reduced and upheld by an Arbitrator; he cannot show that the imposition of discipline against him was a pretext for retaliation. *Collins,* 305 F.3d at 119.[27]

Plaintiff creates no genuine issue of material fact with respect to the legitimacy of MTA's actions in assigning Benjamin to desk duty in 2005. Benjamin does not dispute that Captain Neil Boyle assigned Benjamin to desk duty (Fuchs Decl. Ex. 9 [Boyle Aff.] ¶5). Plaintiff claims that Boyle knew about Benjamin's discrimination complaint, because Boyle wrote in his memorandum that he was "advised of District #1 Case

---

[24] Plaintiff misrepresents the distinguishable holding of *Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003). In *Terry*, the court denied summary judgment on an Immigration and Naturalization Service ("INS") agent's retaliation claim because the INS placed him on administrative leave for a *year and a half*, took away his firearm and allegedly *never* re-authorized him to carry a gun. *Id.* at 142, 145-46.

[25] Benjamin's claim that he was denied overtime as a result of his temporary assignment to modified duty is wholly speculative. The Court should disregard this allegation. *Chin*, 463 F. Supp. 2d at 301.

[26] No evidence contradicts Deputy Chief John D'Agostino's statement in Defendants' initial papers that it is "routine practice" to take away an officer's firearm when the officer is under stress (Fuchs Decl. Ex. 17[D'Agostino Aff.] ¶ 3).

[27] Benjamin's claim that at some unspecified point after November 17, 2006, MTA's Director of Labor Relations offered to withdraw the disciplinary charge if Benjamin withdrew his EEOC Charge is irrelevant, concerns a confidential settlement negotiation and is inadmissible pursuant to Fed. R. Evid. 408. As such, it should be disregarded by the Court.

#05-22730 involving Police Officer Benjamin." (Pl.'s Br. p. 19, n. 33). While Boyle was aware there was a case involving Benjamin, there is no dispute that he had not received Benjamin's complaint of discrimination (Fuchs Decl. Ex. 9 [Boyle Aff.] ¶6). Second, the assignment to desk duty was not an adverse retaliatory action, because it had no effect on Benjamin's career advancement or compensation (Def.'s Br. p. 17). Benjamin's bald statement that he would have received overtime if he had not been on desk duty for four days is speculative and should be disregarded. Finally, Boyle assigned Benjamin to desk duty, because he had not received clearance for Benjamin to resume patrol duties (Fuchs Decl. Ex. 9 [Boyle Aff.] ¶5). Benjamin proffers no evidence showing this legitimate reason is a pretext for unlawful retaliation.

### V. PLAINTIFF CANNOT ASSERT A PATTERN OR PRACTICE CLAIM.

Benjamin's opposition to the dismissal of his pattern and practice claim ignores that every decision in the Second Circuit addressing the issue and other federal appellate and district courts have dismissed pattern or practice claims brought by individual, private plaintiffs.[28] Plaintiff cites cases that do *not* show a split of opinion on this issue. Those cases (Pl.'s Br. p. 22, n. 45) hold that such alleged evidence is insufficient, by itself, to defeat summary judgment.[29]

### VI. BENJAMIN'S § 1983 AND § 1981 CLAIMS FAIL.

Benjamin argues that he is not precluded from stating §§ 1981 or 1983 claims, because MTA's distribution and posting of its discrimination policies was allegedly imperfect (Pl.'s Br. pp. 22-25).[30] He ignores that it is always Plaintiff's burden to show that MTA had a custom or policy of discrimination.[31] Plaintiff has not met this burden, because he cannot show MTA allowed discriminatory practices to be "so persistent and widespread . . . as to constitute a 'custom or usage' with the force of law."[32]

Plaintiff's claim that MTA had a custom or policy of discrimination, because it allegedly "acquiesced in or condoned" unlawful discrimination is based upon misrepresentations of the record[33] and is entirely dependent upon his incorrect presumption that liability in this regard can lie from accusations of discrimination alone. However, complaints alone cannot create liability under §§ 1981 and 1983. Evidence of an actual custom or usage of discrimination is necessary.[34] Benjamin proffers no such evidence. His allegation that former Chief

---

[28] *See, e.g., Henderson v. City of New York*, 2011 U.S. Dist. LEXIS 78451, at *13 (E.D.N.Y. July 20, 2011); *Houston v. Manheim-New York*, 2010 U.S. Dist. LEXIS 142076, at *5-6 (S.D.N.Y. July 7, 2010), *report and rec. adopted*, 2011 U.S. Dist. LEXIS 27066 (S.D.N.Y. Mar. 15, 2011); *United States v. City of New York*, 631 F. Supp. 2d 419, 427 (S.D.N.Y. 2009).
[29] *See, e.g., Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1131-1132 (11th Cir. 1984) ("[Plaintiff] must necessarily show that in fact he was victim of an identifiable act of discrimination.").
[30] Def.'s 56.1 Stmt. ¶¶ 7-11; Fuchs Decl. Exs. 3-4). Several MTA PD members, including Benjamin, were familiar with and freely took advantage of MTA's Office of Civil Rights as a known avenue of recourse (Fuchs Decl. Ex. 7).
[31] *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).
[32] *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870-71 (2d Cir. 1992).
[33] Plaintiff's allegation that MTA was deemed to be "deficient in its compliance" with Federal Transit Administration ("FTA") directives is another blatant misrepresentation of the record. The evidence cited in support of this allegation says no such thing. The referenced correspondence from the FTA actually states that "approval of your program is pending" (Jeremias Decl. Ex. OO), and that "a determination of pending approval will not defer any pending grant applications, suspend progress payments under grants previously awarded, or defer consideration of future grant applications at this time." *Id.*
[34] *EEOC v. Bloomberg L.P.*, 778 F. Supp. 2d 458, 462 (S.D.N.Y. 2011).

9

Executive Officer Katherine Lapp was made aware of his complaint concerning Giel, and that no action was taken in response to his complaint is indisputably false. OCR performed an extensive investigation of Benjamin's claim and found it was unsupported. After the investigation, an Arbitrator also decided that Benjamin's allegation was unsubstantiated. The evidence on the record proves that MTA did not "condone or acquiesce" in unlawful discrimination.

Benjamin alternatively alleges that the fact that he complained to then Chief Kevin McConville about Giel evidences that MTA acquiesced in discriminatory practices (Pl.'s Ctrstmt. ¶¶ YY). To the contrary, the record shows that Benjamin's complaint was preliminarily investigated by IAB and then referred to OCR, where a full investigation was conducted (McConville Dep. 68:13-25; Fuchs Decl. Ex. 15, 8). There is no evidence to show that McConville acquiesced in a "custom or usage of discrimination."

## VII.  PLAINTIFF'S INDIVIDUAL LIABILITY CLAIMS SHOULD BE DISMISSED.

Benjamin's individual §§ 1981 and 1983 claims against McConville fail because he cannot show that he deprived him of a federal right or engaged in discrimination against him.[35] The Arbitrator, not McConville, imposed a six-hour suspension on Benjamin for his failure to perform his traffic duties. McConville cannot be held personally liable for discipline taken in accordance with an impartial arbitrator's findings after a full and fair hearing where Benjamin was represented by counsel. Plaintiff's conclusory assertion that Culhane allegedly had decision-making authority and engaged in widespread discriminatory conduct (Pl.'s Br. p. 25) is purely speculative and cannot create individual liability under §§ 1981 and 1983 (*id.*). Further, contrary to Plaintiff's allegation, the evidence does not show Culhane had any responsibility for assigning Benjamin to desk duty (Fuchs Decl. Ex. 9 [Boyle Aff.] ¶5).

Benjamin's NYCHRL and NYSHRL claims against Culhane and McConville fail for the same reasons as his §§ 1981 and 1983 claims and should be dismissed as well.

## CONCLUSION

For all the forgoing reasons, as well as those set forth in Defendants' initial moving papers and their other reply papers submitted herewith, Defendants respectfully request that the Court grant Defendants' Summary Judgment Motion and dismiss Michael Benjamin's claims in their entirety.

Dated:  New York, New York
        December 2, 2011

Respectfully submitted,
LITTLER MENDELSON, P.C.

By:  ___/s/_____
     Craig R. Benson
     Stephen A. Fuchs
     Elias J. Kahn
900 Third Avenue, 8th Floor
New York, NY 10022
212.583.9600
Attorneys for Defendants

---

[35] *Davis v. County of Nassau*, 355 F. Supp. 2d 668, 675 (E.D.N.Y. 2005) (§ 1983); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) (§ 1981).

10

TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................................ 1

I. PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM FAILS. ........................... 1

II. PLAINTIFF PROFFERS NO EVIDENCE THAT HE WAS DENIED PROMOTIONS BASED ON HIS RACE ...................................................................... 2

    A. Plaintiff's Time-Barred 2003 Detective Promotion Claim Fails ......................... 2

    B. Plaintiff's 2004 Detective Selection Claim Fails ................................................. 3

    C. Plaintiff's Denial of Training Claim Fails ............................................................ 4

III. PLAINTIFF'S DISPARATE DISCIPLINE CLAIM FAILS .......................................... 5

IV. PLAINTIFF'S RETALIATION CLAIMS FAIL ............................................................ 6

    A. Zaino's August 3, 2004 Memorandum Was Not Retaliatory ............................... 6

    B. The August 2004 Letter of Instruction Was Not Retaliatory ............................... 7

    C. The Removal of Benjamin's Firearm in October 2004 Was Not Retaliatory ...... 8

    D. Benjamin's Discipline, Removal of Plaintiff's Weapon and Assignment to Modified Duty and Desk Duty Were Not Retaliatory ......................................... 8

V. PLAINTIFF CANNOT ASSERT A PATTERN OR PRACTICE CLAIM ..................... 9

VI. BENJAMIN'S § 1983 AND § 1981 CLAIMS FAIL ....................................................... 9

VII. PLAINTIFF'S INDIVIDUAL LIABILITY CLAIMS SHOULD BE DISMISSED ........ 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aulicino v. New York City Dep't of Homeless Servs.*,
580 F.3d 73 (2d Cir. 2009)..................................................................................................4

*Bennett v. Watson Wyatt & Co.*,
136 F. Supp. 2d 236 (S.D.N.Y. 2001), *aff'd*, 51 F. App'x 55 (2d Cir. 2002).......................1, 2

*Brandon v. City of New York*,
705 F. Supp. 2d 261 (S.D.N.Y. 2010)....................................................................................6

*Brennan v. Metropolitan Opera Ass'n*,
192 F.3d 310 (2d Cir. 1999)................................................................................................1, 2

*Brown v. Coach Stores*,
163 F.3d 706 (2d Cir. 1998)....................................................................................................1

*Burlington Northern & Santa Fe Ry. v. White*,
548 U.S. 53 (2006)...................................................................................................................7

*Byrnie v. Town of Cromwell Bd. of Educ.*,
243 F.3d 93 (2d Cir. 2001)......................................................................................................2

*Carmichael v. Birmingham Saw Works*,
738 F.2d 1126 (11th Cir. 1984)..............................................................................................9

*Chin v. ABN-AMRO N. Am., Inc.*,
463 F. Supp. 2d 294 (E.D.N.Y. 2006) ................................................................................5, 8

*Clark County Sch. Dist. v. Breeden*,
532 U.S. 268 (2001)................................................................................................................7

*Cody v. County of Nassau*,
577 F. Supp. 2d 623 (E.D.N.Y. 2008) *aff'd*, 345 F. App'x 717 (2d Cir. 2009).......................7

*Collins v. N.Y. City Transit Auth.*,
305 F.3d 113 (2d Cir. 2002)................................................................................................5, 8

*Cruz v. Coach Stores, Inc.*
202 F.3d 560 (2d Cir. 2000)....................................................................................................1

*Davis v. County of Nassau*,
355 F. Supp. 2d 668 (E.D.N.Y. 2005) ..................................................................................10

*EEOC v. Bloomberg L.P.*,
778 F. Supp. 2d 458 (S.D.N.Y. 2011)....................................................................................9

*El Sayed v. Hilton Hotels Corp.*,
    627 F.3d 931, 933 (2d Cir. 2010) ..................................................................................7

*Fullwood v. Ass'n for the Help of Retarded Children*,
    08 CV 6739 (DAB), 2010 U.S. Dist. Lexis 107713 (S.D.N.Y. Sept. 28, 2010) .............6

*Henderson v. City of New York*,
    2011 U.S. Dist. LEXIS 78451 (E.D.N.Y. July 20, 2011) ..............................................9

*Houston v. Manheim-New York*,
    2010 U.S. Dist. LEXIS 142076 (S.D.N.Y. July 7, 2010) ..............................................9

*La Grande v. Descrescente Distrib. Co.*,
    08 Civ. 3010, 09 Civ. 1789, 370 F. App'x 206 - 211 (2d Cir. 2010) ............................1

*Latino Officers Ass'n v. City of New York*,
    2003 U.S. Dist. LEXIS 10057 (S.D.N.Y. June 17, 2003) .............................................2

*Leung v. New York Univ.*,
    2010 U.S. Dist. LEXIS 33265 (S.D.N.Y. March 29, 2010) ..........................................1

*Lyman v. CSX Transp., Inc.*,
    364 F. App'x 699 (2d Cir. 2010) ....................................................................................6

*Mullins v. City of New York*,
    626 F.3d 47 (2d Cir. 2010) .............................................................................................7

*Nakis v. Potter*,
    2004 U.S. Dist. LEXIS 25250 (S.D.N.Y. Nov. 30, 2004) .............................................5

*Petrovits v. N.Y. City Transit Auth.*,
    2003 U.S. Dist. LEXIS 18347 (S.D.N.Y. Oct. 12, 2003) ..............................................6

*Schwapp v. Town of Avon*,
    118 F.3d 106 (2d Cir. 1997) ...........................................................................................2

*Shub v. Westchester Cmty. College*,
    556 F. Supp. 2d 227 (S.D.N.Y. 2008) ............................................................................3

*Shumway v. UPS*,
    118 F.3d 60 (2d Cir. 1997) .............................................................................................4

*Sorlucco v. New York City Police Dep't*,
    971 F.2d 864 (2d Cir. 1992) ...........................................................................................9

*Terry v. Ashcroft*,
    336 F.3d 128 (2d Cir. 2003) ...........................................................................................8

*Texas Dep't of Community Affairs v. Burdine*,
   450 U.S. 248 (1981)..................................................................................................9

*United States v. City of New York*,
   631 F. Supp. 2d 419 (S.D.N.Y. 2009).........................................................................9

*Whidbee v. Garzarelli Food Specialties, Inc.*,
   223 F.3d 62 (2d Cir. 2000).......................................................................................10

**FEDERAL RULES**

Fed. R. Evid. 408 ...............................................................................................................8

**STATUTES**

42 U.S.C. § 1981 ("§ 1981")........................................................................................9, 10

42 U.S.C. § 1983 ("§ 1983")........................................................................................9, 10

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").........1

New York State Human Rights Law ("NYSHRL") .................................................... 1, 10

New York City Human Rights Law ("NYCHRL") ..................................................... 1, 10

N.Y.C. Admin. Code § 8-107(7)........................................................................................7

Firmwide:105394654.4 039247.1016